Joseph M. Alioto (CSBN 42680)
Tatiana V. Wallace (CSBN 233939)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: josephmalioto@aliotolaw.com
Email: twallace@aliotolaw.com

Attorneys for Plaintiffs

ADDITIONAL COUNSEL ON LAST PAGE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD FRY, KATHERINE ARCELL, JOSE BRITO, JAN-MARIE BROWN, ROSEMARY D'AUGUSTA, PAMELA FAUST, CAROLYN FJORD, DON FREELAND, MICHAEL MALANEY, LEN MARAZZO, LISA MCCARTHY, TIMOTHY NIEBOER, DEBORAH PULFER, BILL RUBINSOHN, SONDRA RUSSELL, CLYDE STENSRUD, CHRISTINE WHALEN, PAMELA WARD )))))))))))) | **COMPLAINT FOR INJUNCTIVE RELIEF TO ENJOIN PENDING ACQUISITION OF DISCOVER FINANCIAL SERVICES, INC. BY CAPITAL ONE FINANCIAL CORPORATION** |
| Plaintiffs ))) | |
| v. ))) | |
| CAPITAL ONE FINANCIAL CORPORATION ))) | |
| Defendant. | |

1

**INTRODUCTION**

1.       This is a private antitrust action brought under the authority of Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) charging violations of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18) seeking a permanent injunction to prohibit Capital One from acquiring its direct competitor Discover.  The proposed acquisition was announced in February 2024 and is expected to close on May 18, 2025.  The pending merger of two major competitors poses an imminent direct threat to competition in the credit card issuing and processing marketplace.

## Credit Card Issuers vs. Credit Card Payment Processing Networks



**Credit card issuers**
*Typically banks, issue credit cards to customers*

**Credit card payment processing networks**
*Provide infrastructure to support funding of credit card transactions*

**Hybrid – credit card issuers/ payment processing networks**
*Act as both credit card issuers and payment processing networks*

2.       Capital One is one of the nation's largest issuers of Visa and Mastercard general purpose credit cards.  It uses the Visa and Mastercard open-loop payment-card networks to process the transactions conducted on its issued cards.  The Visa and Mastercard networks do not

2

issue credit cards to cardholders.  Instead, they license financial institutions such as Capital One to issue their trademarked cards.  Discover and American Express, on the other hand, are closed-loop credit-card networks that directly issue cards to cardholders and process the transactions conducted on their cards.

3.      The acquisition, at $35 billion, is now imminent.  If it succeeds, it will eliminate one of four dominant general purpose credit card firms in the Card Payment Processing Networks, causing irreparable injury because Discover would be eliminated and would not be able to return.  Visa, Mastercard, American Express, and Discover compete directly in this market.  The proposed acquisition would give Capital One the largest credit card portfolio in the U.S., surpassing that of JPMorgan Chase.  The Capital One - Discover combination would further concentrate an already highly concentrated market.  Damage caused to the Plaintiffs and to the public at large by the potential elimination of Discover—Capital One's direct competitor—is substantial and foreboding. The following charts demonstrate the anticompetitive effects and substantial increases in concentration which will result because of the elimination of Discover, a competitor in both issuing credit cards and processing transactions.  The number of total cardholders would boost Capital/Discover from number 2 and number to number 1 with over 181.9 million (181,900,000).

///
///
///
///
///
///
///
///
///
///
///

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Source: moneygeek.com/credit-cards/largest-credit-card-issuers



Source: moneygeek.com/credit-cards/largest-credit-card-issuers

4

The number of top credit card issuers shows that Capital One and Discover, numbers 5 and 7, after the acquisition would become number 3 with a purchase volume of $822 billion ($822,000,000,000).



*Source: statista.com*



*Source: statista.com*

The number of top outstanding balances increase the positions of Capital One and Discover from number 4 and number 6 to number 1, giving a control over cardholder debtors of over $237 billion ($237,000,000,000).



*Source: moneygeek.com/credit-cards/largest-credit-card-issuers*



*Source: moneygeek.com/credit-cards/largest-credit-card-issuers*

6

With regard to the payment processing networks, in terms of sales revenues, Discover is number 4.  The acquisition of Discover by Capital One would show the inherent conflict with Visa and Mastercard because Capital One, in the words of its CEO, would be both "partner and competitor" of Visa and Mastercard.  Independent networking would be lost since Capital One would be in an insurmountable conflict of interest and more susceptible to coordinating pricing with Visa and Mastercard and less likely to vigorously compete against them.  With regard to sales revenues in the credit card payment processing, the following charts demonstrate the rankings.



Source: merchantmaverick.com/credit-card-networks

The purchase volume rankings of the credit card payment networks shows Discover as being number 4 with $589 billion.

7

4.     The acquisition is prohibited by binding authority set out in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 (1963), *United States v. Aluminum Company of Am.*, 377 U.S. 271 (1964), *United States v. Von's Grocery Co.*, 384 U.S. 270 (1966), *United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966), and *United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973).

5.     The private action herein set forth is specifically authorized under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) which provides that "any person [including members of the public]…shall be entitled to sue and have injunctive relief …against threatened loss or damage by a violation of the antitrust laws."

6.     The remedy afforded to private plaintiffs includes the prohibition of the potential unlawful acquisition at its incipiency.  As was unequivocally stated by the United States Supreme Court in *California v. American Stores Co.* 495 U.S. 271, 283 (1990), "[T]he literal text of Section 16 is plainly sufficient to authorize injunctive relief [in favor of a private Plaintiff], including an order of divestiture, that will prohibit that conduct from causing that harm."

7.     The proposed acquisition should to be enjoined under the authority of the Supreme Court which has stated that anticompetitive mergers must be enjoined at their incipiency.

8.     Private actions to vigorously challenge anticompetitive acquisitions have been encouraged by the Congress and the Supreme Court of the United States in strong and unmistakable language: "The Act's other provisions manifest a clear intent to encourage vigorous private litigation against anticompetitive mergers." *California v. American Stores Co.* 495 U.S. at 284.

## PARTIES

### I.     PLAINTIFFS

9.     The Plaintiffs named below are individual citizens of the cities and states listed. All of the plaintiffs are debit and credit card holders and are threatened and fear future injury and damage in that their consumer choice will be eliminated, prices and rates may be increased, rewards may be lowered or eliminated, and the quality of the services may be decreased, and the

benefits of competition will be substantially and adversely impacted if not completely eliminated.  Plaintiffs have various credit and debit cards including Capital One and Discover. Each of the plaintiffs has been encouraged by the Congress and the Supreme Court to bring this case and to ensure that what competition exists will not be further eroded.  All of these threats and fears are imminent because the defendants have announced that they intend to close on May 18, 2025.  The plaintiffs intended to rely upon the government to protect their interests but because the government has withdrawn the only way to protect again the fear and threat of anticompetitive conduct is to file this separate, private suit pursuant to the encouragement of both the Congress and the Supreme Court of the United States.  We believe that by reason of the proposed acquisition we will be irreparably harmed because Discover will be eliminated as a competitor and presumably will not be able to come back.  On the other hand, if Capital One wishes to enter a networking market by competition rather than acquisition we would encourage additional competition.

The Plaintiffs are:

Donald Fry, Tucson, AZ
Katherine R. Arcell, New Orleans, LA
Jose M. Brito, Reno, NV
Jan-Marie Brown, Carson City, NV
Rosemary D'Augusta, Millbrae, CA
Pamela Faust, Loveland, OH
Carolyn Fjord, Winters, CA
Don Freeland, Thousand Palms, CA
Michael C. Malaney, Grandville, MI
Len Marazzo, Reno, NV
Lisa McCarthy, Naples, FL
Timothy Nieboer, Clarkston, MI
Deborah M. Pulfer, Sidney, OH
Bill Rubinsohn, Jenkintown, PA
Sondra K. Russell, Waco, TX
Clyde D. Stensrud, Kirkland, WA
Christine Whalen, New Orleans, LA
Pamela S. Ward, Garland, TX

10.    The Plaintiffs reside in and use their Capital One issued credit cards in one or more of the twelve states set out above.

## II.    DEFENDANT

11.    Defendant Capital One Financial Corporation ("Capital One") is a Delaware corporation headquartered at 1680 Capital One Drive, McClean, Virginia.

12.    Capital One provides a broad range of banking, credit card, auto loans, and other financial services throughout the United States.  With branches in every state, it is one of America's largest banks.  Capital One is the third largest issuer of Visa and Mastercard credit cards.

13.    According to its Annual Report, S.E.C. Form 10-K, Capital One is the third largest issuer of Visa ("Visa") and Mastercard ("Mastercard") credit cards in the U.S. based on the outstanding balance of credit card loans.  As one of the nation's largest banks based on deposits as of December 31, 2024, Capital One maintains full-service banking customer accounts "through digital channels and our network of branch locations, cafes, call centers and automated teller machines ("ATMs").

14.    Capital One generated $36.8 billion in revenue in 2023.  Its net revenue attributable to its credit card business segment was $22.3 Billion.

15.    Defendant Discover Financial Services ("Discover") is a Delaware corporation with headquarters at 2500 Lake Cook Road, Riverwoods, Illinois.  Discover is a digital banking and payment services company. It provides digital banking and payment products.

16.    Discover's digital banking line of business includes credit cards, private student loans, personal loans, home loans, and deposits.  Its payment services business includes credit and debit card business as well as its proprietary company owned and operated payment processing network.

17.    Discover maintains direct relationships with merchants as well as with "Network Partners" that facilitate card processing transactions for Discover-enabled cards in situations where merchants do not have direct relationships with Discover.

18.     Discover Card volume was $224.511 billion in 2024, $225.6 billion in 2023, $477 billion in 2022, and $192 billion in 2021.

## JURISDICTION AND VENUE

19.     The proposed acquisition is a violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 1 and §18).  The direct effect of the proposed acquisition may be "substantially to lessen competition or tend to create a monopoly" in the credit card processing market by the elimination of a significant competitor in this non-trivial transaction.

20.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), and 1337(a) (antitrust); and under 15 U.S.C. § 15 (antitrust).

21.     Venue is appropriate in this district under 15 U.S.C. § 15(a) (Clayton Act), 15 U.S.C. § 22 (nationwide venue for antitrust matters), and 28 U.S.C. § 1391(b) (general venue provision). Capital One and Discover transact business within this district, and each transacts its affairs and carries out interstate trade and commerce, in substantial part, in this district.

22.     This private action is specifically authorized under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) which provides that "any person [including members of the public]...shall be entitled to sue and have injunctive relief ...against threatened loss or damage by a violation of the antitrust laws."

## FACTS

## I.     THE RELEVANT MARKETS

23.     The proposed acquisition of Discover by Capital One - two major competitors - threatens competition in the credit card issuing and processing marketplace.  The two markets impacted are 1) the General Purpose Credit Card Submarket within the broader two-sided Payment Card Market for card issuance and acceptance; and 2) the two-sided Transaction Platform Market for card payments processing.

### A.     The Two-Sided Transaction Platform Relevant Market

24.     The Two-Sided Transaction Platform is the relevant market for credit-card electronic payments and settlement systems.  The companies operating in this market are payment-card networks.  Visa, Mastercard, American Express, and Discover are the four

networks doing business in the United States. Each network's two-sided transaction platform functions to allow cardholders to make e-payments to merchants for purchases transacted on their credit cards.

25.    Visa and Mastercard are open-loop networks that license banks to issue their branded cards. Discover and American Express operate closed-loop networks that issue credit cards and process the payments made on their issued cards.

26.    Discover owns its own credit card transaction processing platform. The proposed acquisition of Discover by Capital One would provide Capital One, the fourth largest Visa Mastercard member bank, ownership of its own independent payments processing platform. It costs Discover less than a penny regardless of transaction size to process a single credit card transaction over its network. By contrast, competing banks must purchase access to the separately owned Visa and Mastercard transaction platforms in order to process their payment transactions. (Banks pass their network access costs through to merchants.)

27.    The Visa / Mastercard networks require their "member banks" to charge interchange fees to their merchant clients in amounts set by Visa and Mastercard. On average, interchange fees are approximately 2.5% of the merchant's gross transaction price. This fee is retained by the issuing banks.

28.    The Relevant Geographic Market is the United States. This market is distinct because anti-money laundering, consumer protection, and banking regulation laws are specific to the United States. The relevant product is the credit card *Transaction*.

### B.    The Two-Sided General Purpose Credit Card Relevant Market

29.    The two-sided Payment Card Market is one whole, platform-wide, general-purpose card and payments market. Visa and Mastercard operate open-loop payment card networks that license financial institutions to issue their branded cards. Cardholders, merchants, financial institutions, and the Visa / Mastercard transaction platforms (payments processing) participate and interact in this market. Here, cardholders and card issuers participate on one side of the

market; merchants and acquirers (merchants' banks) participate on the other; and the Visa / Mastercard networks' transaction platforms participate on both sides.

30.    Discover and American Express operate closed-loop networks that issue credit cards and process the payments made on their issued cards.  Here, cardholders participate on one side of the market; merchants participate on the other; and the Discover / American Express transaction platforms participate on both sides.

31.    American Express and Discover are closed-loop systems that issue credit-cards directly to consumers.  Visa and Mastercard are open-loop systems that do not issue cards but instead license their bank members to issue cards to consumers.  Market participants on an open-loop transaction platform are cardholders, merchants, issuers, acquirers, and a network that participates on both sides.  The Visa and Mastercard transaction platforms are market participants in the two-sided Payment Card Market—the *Transaction Platform* relevant market.

## II.    MARKET CONCENTRATION

### A.    Issuer Concentration

32.    Purchases on U.S. issued Visa, Mastercard, American Express and Discover general purpose credit cards added to $6.136 trillion in 2024. The top ten issuers accounted for $5.064 trillion of the purchase volume, representing 82.52% of the industry total. More than 4,500 financial institutions issue credit cards in the United States.  At year-end 2024, there were 942 million Visa, Mastercard, American Express and Discover credit cards in circulation.  Thirty-four million U.S. merchant locations accepted those cards in exchange for goods and services.

33.    The five largest issuers accounted for 69.1% of all credit card spending purchase volume in 2024.  The ten largest accounted for more than 82.5% of the total. Purchase volume on Capital One issued general purpose credit cards was $609.63 billion in 2024.  Discover's volume was $212.25 billion.

34.    Market concentration enables the largest issuers to encourage Visa and Mastercard to set interchange rates above competitive levels.  Set and announced twice a year,

13

interchange fees are non-negotiable.  All Visa / Mastercard licensed banks are contractually bound to charge the set fees to their merchant customers.  No effective price competition exists as to the fees.



**Nilson Report Issue 1280 February 2025 Top Issuers**

35.    The ten largest issuers of Visa, Mastercard, American Express, and Discover general purpose credit cards in the United States generated $5.064 trillion in purchase volume in 2024, which was 82.52% of the industry total.

14

**Purchase Volume in Billions 2024**

| | |
|---|---|
| JPMorgan Chase | $ 1,344.02 |
| American Express | $ 1,168.27 |
| Citi | $.616.10 |
| Capital One | $.609.63 |
| Bank of America | $.501.94 |
| Discover | $ 212.25 |
| U.S. Bank | $ 211.17 |
| Wells Fargo | $ 207.64 |
| Barclays | $ 114.08 |
| Synchrony | $  78.50 |
| TOTAL: | $ 5.064 Trillion |

36.     Market concentration enables the largest issuers to encourage Visa and Mastercard to set interchange rates above competitive levels.

37.     The U.S. General purpose credit Card Market is moderately concentrated. According to The Herfindahl- Hirschman Index (HHI), relied upon by the United States Department of Justice as a reliable measure of market concentration, HHI descriptive of the General Purpose credit card market is 1671.5. According to DOJ's Horizontal Merger Guidelines, HHIs between 1,500 and 2,500 indicate moderate concentration.  An HHI of more than 2,500 indicates a highly concentrated market. The proposed acquisition of Discover by Capital One will most surely raise the HHI concentration level.  DOJ estimates a minimum increase to 1,747.46.

**B.     The Transaction Platform Market for Card Payments Processing is Highly Concentrated.**

38.     The Transaction Platform Market is highly concentrated.  The proposed acquisition will surely increase the already high levels of market concentration. Competition will suffer in the process.  With the proposed acquisition, one of the largest U.S. issuers of Visa and

Mastercard credit cards (Capital One) will become Visa's and Mastercard's horizontal competitor able to take ownership and control of one of the two remaining competitors of these firms.

39.    Spending on U.S. issued Visa, Mastercard, American Express, and Discover branded credit, debit, and prepaid cards in 2024 set a new record to total $11.903 trillion.  Of this, $10.773 trillion was spent on general purpose debit and credit cards—$4.637 trillion debit and $6.136 trillion credit.  Credit card purchase volume across the four networks—up 5.1% over 2023—reached $6.464 trillion including private label and prepaid cards.  General purpose credit-card spending totaled $6.136 trillion, up 5.3% over 2023. (Nilson Report Globe Newswire press releases on March 6, 2025 and March 19, 2025.) (Reference also Nilson Report Issue 1279 February 2025 and Issue 1280 February 2025.)



**Nilson Report Issue 1279 February 2025**

40.     In 2024, Visa had a 52.22% credit card market share; Mastercard had 24.87%; American Express had 19.46%; and Discover had a 3.46% share.  Mastercard and Visa together held a 77.09 % market share.

41.     The U.S. credit card payment processing market—the Transaction Platform Market—is highly concentrated.  The Herfindahl-Hirschman Index (HHI), based on 2024 data taken from Nilson Reports, is 3736.109.  (Department of Justice, Horizontal Merger Guidelines provide that an HHI between 1,500 and 2,500 is moderately concentrated.  Markets exhibiting an HHI in excess of 2,500 points to be highly concentrated.

42.     The Transaction Platform Market is highly concentrated at present and will only increase in concentration post - acquisition. Key Section 7 cases show market share and rankings pre-acquisition and post-acquisition for the enjoined acquisitions described in the paragraphs and chart below.

43.     Market concentrations with much lower numbers have in the past been held by the Supreme Court to constitute a violation of Section 7 of the Clayton Act.  See *United States v. Aluminum Company of America*, 377 U.S. 271 (1964) (elimination of Rome Cable with only 1.3% share of national market), and *United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966) (nos. 10 and 18 in the national market becoming no. 5 with 4.9%). (See Chart Following.)

44.     In two major cases involving the grocery industry, the Supreme Court condemned the acquisitions as violations of Section 7 of the Clayton Act.  The first was Von's in a small area of the country, the Los Angeles market, in *United States v. Von's Grocery Co.*, 384 U.S. 270 (1966) where the combination of nos. 3 and 6 groceries becoming no. 2 with 7.5% of the Los Angeles market was outright condemned by the Court.  In *United States v. Von's Grocery Co.*, 384 U.S. 270 (1966), where the combination of nos. 3 and 6 groceries becoming no. 2 with 7.5% of the Los Angeles market, the Supreme Court condemned the acquisitions as violations of Section 7 of the Clayton Act.

***

# Key Section 7 Cases
## Market Share and Rankings, Pre-Merger vs. Post-Merger

| Acquiring Company Market Share | Acquired Compan(ies) Market Share | Merged Entity Market Share | Result |
|---|---|---|---|
| **VONS** • 4.7% share • #3 in market | **Shopping Bag** • 4.2% share • #6 in market | • 7.5% share • #2 in market | ENJOINED |
| **ALCOA** • 27.8% share • #1 in market | **ROME CABLE** • 1.3% share • #9 in market | • 29.1% share | ENJOINED |
| • 5.48% share tri-state • #10 nationwide • #4 statewide (WI) • #7 tri-state (WI, Ill, Mich) | • 5.84% share tri-state • #18 nationwide • #1 statewide (WI) • #6 tri-state (WI, Ill, Mich) | • 11.32% share tri-state • #5 nationwide • #1 statewide (WI) • 4.49% share nationwide • 23.95% share statewide | ENJOINED |
| • 6% manufacturing share • #3 in manufacturing | **Kinney shoes** • .05% manufacturing share • #12 in manufacturing • 2% retail share | • 6% manufacturing share • #3 in manufacturing • 9.5% retail share • #2 in retail market | ENJOINED |
| **PNB** • #2 in market | • #3 in market | • #1 in market • 36% share (of assets) | ENJOINED |

14

### III.     INTERCHANGE FEES

45.     Interchange fees are fees set by the credit card networks and charged by banks—in the case of Visa and Mastercard—to merchants for processing cardholders' credit-card payment transactions.  The Visa and Mastercard networks' transaction platforms facilitate payment for which they charge a network access fee, but the interchange fees are retained as income by the card issuing banks, usually the bank or financial institution that provided the credit card to the cardholder.

46.     Interchange fees are the largest component of the transaction fees collected on every credit card transaction in the United States. The interchange fee is charged as a percentage of each credit card transaction. The issuer withdraws the interchange fee from the cardholder's payment, and simultaneously electronically deducts it from the amount it transmits to the merchant's bank for payment to the merchant.

47.     The interchange fee amount that a credit card issuer receives is set by the network that processes the cardholders' payments for purchases made on the issuer's cards.  The two payment processors providing services to most credit-card issuers in the United States are the open-loop Visa and Mastercard transaction platforms.  Discover and American Express maintain closed-loop networks separate from Visa or Mastercard.

48.     American Express and Discover issue credit cards and process transactions on their platforms. The Visa and Mastercard open-loop networks license banks to issue their branded cards to consumers.  Each processes transactions on its respective transaction platform.

### IV.     CUSTOMER REWARDS

49.     Credit cards often provide rewards and related inducements to encourage expenditure on the credit card. These rewards include cash back, airline miles, consumer product credits, gift-cards, and other incentives. Although there is a wide range of rewards categories, most rewards have generally accepted cash-equivalent value.

50.     In addition, general purpose credit cards allow their users to maintain a credit balance, or to revolve a balance from month to month. (Debit cards, however, do not generally provide for credit, nor do they provide rewards for expenditures.)

51.    Credit card interest rates are distinct from interest rates charged for other products, including secured products.  Higher Card interest rates are advertised to be offset by the value of rewards remitted to the subscriber. Other debt products do not have such an offsetting price component. Credit card companies compete for customers by providing these rewards from their share of the interchange fees they collect. As such, the amount of rewards provided to credit card customers is sensitive to the share of the interchange fees an issuer can obtain from each transaction.

52.    The Consumer Financial Protection Bureau (CFPB) explains in an October 2023 report titled "The Consumer Credit Card Market," that interest payments almost always exceed the rewards provided for consumers that carry a credit card balance:

> The dollar value of rewards earned by general purpose cardholders exceeded $40 billion for mass market issuers in 2022. Transaction accounts, or those where the cardholder pays the full statement balance each month, are increasingly benefiting from credit card use. But, when a consumer revolves a balance on their credit card, the cost of interest and fees almost always exceed the value of rewards the consumer may have earned. Cardholders' rewards redemptions have increased, but consumers still forfeit hundreds of millions of dollars in rewards value each year.

53.    And as to customers that do not maintain a balance on their credit cards, there remains a cost to each credit card transaction.

54.    Retail market forces invariably demand that merchants pass the ubiquitous interchange fee on. Merchants generally incorporate the interchange fees that are calculated as a percentage of the gross amount tendered in the sale of goods and services into their pricing structures.  The inevitable result is consumers pay higher product and services prices.

55.    Credit card issuers use part of their interchange revenue to provide credit card rewards.  Credit card rewards are provided through rewards programs designed to motivate consumers to use an issuer's credit card.

56.    Credit card issuers offer various rewards programs and charge the cost of the rewards to their interchange revenue. The 2024 Capital One Annual Report states:

We offer products, primarily credit cards, which include programs that allow members to earn rewards based on account activity that can be redeemed for cash (primarily in the form of statement credits), gift cards, travel, or covering eligible charges. The number of rewards that a customer earns varies based on the terms and conditions of the rewards program and product. (pg. 93)

Customer rewards costs, which we generally record as an offset to interchange income, are driven by various factors such as card member purchase volume, the terms and conditions of the rewards program and rewards redemption cost. We establish a customer rewards reserve that reflects management's judgment regarding rewards earned that are expected to be redeemed and the estimated redemption cost. (pg. 93)

57.    The 2024 Capital One Annual Report describes interchange fee revenue and rewards costs as follows:

The majority of our revenue from contracts with customers consists of interchange fees, service charges and other customer-related fees, and other contract revenue. Interchange fees are primarily from our Credit Card business and are recognized upon settlement with the interchange networks, net of rewards earned by customers. (Pg. 232)

Interchange fees are presented net of customer reward expenses of $9.0 billion, $8.2 billion and $7.6 billion for the years ending December 31, 2024, 2023 and 2022, respectively.

Credit card interchange fees net of rewards costs were $4,340 million ($4.340 billion), $4,333 million ($4.333 billion), and $4,178 million ($4.178 billion) for the years ended December 31, 2024, 2023 and 2022, respectively. (Pgs. 232-233)

Our customer rewards reserve, which is included in other liabilities on our consolidated balance sheets, totaled $8.2 billion and $7.4 billion as of December 31, 2024 and 2023, respectively. (Pg. 94)

58.    Processing fees in 2024 totaled $187.20 billion.  Interchange fees comprise most of the processing fees.  Of the total, $148.52 billion, up 9.3% from 2023, was collected on a $6.136 trillion general purpose credit card purchase volume, up 5.3% over 2023.  Striking is that while credit-card spending increased 5.3% over 2023, processing fees increased 9.3%, nearly twice the spending increase.

59.    Visa and Mastercard each set interchange fees. Their licensee banks by agreement charge the fees set by Visa Mastercard to the merchants whose credit card transactions they process.

60.    Visa and Mastercard are subject to the influence of their major customers, including Capital One, with regard to prices they set.  Capital One benefits from higher interchange fees. The fees paid by merchants not only feed Capital One's profits, but they also enable it to promote greater rewards benefits to its customers. Predictably, cardholders pay significantly more in interest charges than they receive in rewards.

## V.    THE VERTICALLY INTEGRATED CREDIT CARD COMPANIES

61.    The Discover closed-loop network issues cards and processes payments on the cards. Their closed loop payment systems enable Discover and American Express to offer more valuable rewards to their customers as an incentive for consumers to use their credit cards.  The intent is to generate greater profits from higher interchange fees and credit card interest.

62.    Discover's 2023 10-K defines its rewards model this way:

Our credit card business also competes on the basis of reward programs and merchant acceptance. We compete for accounts and utilization with cards issued by other financial institutions (including American Express, Bank of America, JPMorgan Chase,

Capital One and Citibank) and, to a lesser extent, businesses that issue their own private label cards or otherwise extend credit to their customers. In comparison to our largest credit card competitors, our strengths include no

annual fees, cash rewards, conservative portfolio management and strong, 100% U.S.-based customer service. Competition based on rewards and other card features and benefits continues to be strong....

63.    Discover and American Express, by virtue of their closed-loop business model, apply pressure on issuers, such as Capital One, to remit greater rewards to remain competitive.

64.    Today, Discover and American Express, are accepted at 99% of U.S. merchants that accept credit cards. Rewards-based competition is intense and closely concentrated among the four competitors. The existence of closed-loop, vertically integrated competitors Discover and American Express incentivizes issuers that use open-loop networks, such as Visa and

Mastercard, to negotiate higher shares of the interchange fees charged on each transaction, thereby allowing those issuers to provide rewards that are competitive with American Express and Discover.

65.     Indeed, issuers that use Visa and Mastercard have little discretion to determine interchange fee amounts as they are set by Visa and Mastercard independently.  By contrast, Discover and American Express set their own interchange fees consistent with competitive market influences. Overall, the existence of two vertically integrated and closed-loop rivals makes the card processing and issuing markets more competitive and puts price pressure on Visa and Mastercard issuers, including Capital One, through independently determined interchange fees and rewards offers.  With the proposed acquisition there will be only one.

## VI.     THE CAPITAL ONE AGREEMENTS WITH VISA AND MASTERCARD

66.     As the third largest issuer of Mastercard and Visa credit cards, Capital One maintains longstanding relationships and agreements with both companies for its credit cards. Capital One uses Visa and Mastercard payment networks for its credit cards.  It operates its card issuance and merchant processing business pursuant to long-term heretofore exclusive agreements with Visa and Mastercard for the provision of its card transaction processing requirements.

67.     The Visa and Mastercard agreements are applicable to all banks seeking Visa's or Mastercard's card issuance authorization.  Called "member agreements," they set forth the uniform terms of the parties' agreement to accept the interchange fees set by Visa/Mastercard that are required to be charged on Visa or Mastercard card payment transactions conducted by member banks including Capital One.  Since at least 2005, these agreements have been alleged to be price fixed anticompetitive agreements. Thousands of antitrust cases have been filed by merchants and consumers challenging these agreements.  That litigation, consolidated in the MDL Eastern District of New York, has been pending for twenty years.

68.    Recently Visa and Mastercard were sued by payment company Block for colluding on interchange fees. Forbes reported in a July 25, 2023 article titled, "Block Sues Mastercard and Visa Alleging Inflated Merchant Fees":

> Block is accusing payment-card networks and their member banks of charging inflated fees and using their market power to sustain anti-competitive practices.

> "Block alleges in a lawsuit filed July 14 that member banks involved with each network colluded to sustain network fees, called interchange, at a level above what would be tolerated in a competitive market. The complaint, filed in the federal court for the Eastern District of New York cites an "Honor All Cards" policy that requires merchants to accept all cards, regardless of the issuing bank, on the Visa or Mastercard networks. Since merchants are not allowed to pick and choose which cards they accept, the issuing banks do not compete to win the favor of merchants, according to the suit Member banks agree to default fees set by Visa and Mastercard so they are not incentivized to undercut each other on price and instead benefit from inflated fees, the suit argues.

> As a result, there are no forces driving interchange fees down and merchants have few options for avoiding them. Interchange fees are set at varying levels depending on the type and size of the merchant and the consumer's card, according to the suit. Credit card interchange fees typically range between 1% and 2.5%.

69.    Similar profound anticompetitive concerns will be increased by the proposed acquisition here in issue.

## VII.    CAPITAL ONE ANNOUNCES ACQUISITION OF DISCOVER.

70.    On February 19, 2024, Capital One announced that it would acquire its competitor, Discover.  The acquisition as announced in the Wall Street Journal calls for a payment of $35 billion dollars payable in Capital One securities.  No cash was mentioned.  The February 19, 2924 WSJ article is quoted here

> "Capital One Is Buying Discover Financial For $35 Billion." Capital One said it will buy Discover Financial Services for more than $35 Billion, a deal that will marry two of the largest credit-card companies in the U.S. Under the terms of the all-stock deal, Discover shareholders are set to receive 1.0192 Capital One shares for each Discover share, representing a premium of about 27% based on Discover's closing price Friday. After the deal closes, Capital One shareholders will hold roughly 60% of the combined company, with Discover shareholders owning the rest.

71.     The acquisition as proposed would give Capital One ownership and control over Discover, a direct competitor in the credit card market.  Capital One would acquire Discover's trademarked credit card payment processing network.  Capital One processes its Visa and Mastercard credit/debit card payments in accordance with its card issuer contracts with the Visa and Mastercard networks.  The Discover acquisition would give it rights to Discover's competing processing network.  The Wall Street Journal continues:

> Buying Discover would give Capital One, a credit-card lender with a market value of a little over $52 billion, a network that would vastly increase its power in the payments ecosystem.
> Card networks are critical to enabling transactions and setting fees that merchants pay when consumers shop with credit cards. Though much smaller than Visa and Mastercard, Discover is one of the few competitors to those companies in the U.S. and it is one of a small number of card issuers that also has a payments network.

72.     By way of acquisition, Capital One seeks to provide network processing services independently and apart from the processing services it employs pursuant to its agreements with Visa and Mastercard.  It will acquire an up-and-running payments platform independent of the Visa and Mastercard owned networks it presently uses pursuant to its card issuer "member agreements" with Visa and Mastercard.

73.     With the announced acquisition, Capital One intends to gain entry into the card payment processing business without the investment of independent capital, development time, expertise and labor expenditure that would be necessary to independently develop its own network facility.  Moreover, if approved the acquisition will result in Capital One's ownership and control over a network that operates in direct competition with the same Visa Mastercard networks Capital One presently uses exclusively to process its card transactions.

### A.     Capital One Intends To Maintain Its Horizontal Member Agreements with Visa and Mastercard Post-Acquisition

74.     Capital One's CEO, Richard Fairbank, explains how the Discover acquisition would provide Capital One with its own payment processing network:

> Owning a network allows us to enjoy the benefits of vertical integration. Owning a network allows us to deal more directly with merchants rather than a network

intermediary, create more value for merchants, small businesses and consumers, and capture the additional economics from vertical integration.

Let me take a moment to double-click on the impact of working more directly with merchants, as we think it's a critical part of the strategic rationale and how we provide them more value. Our broader strategy over time has been to get closer to merchants. This includes our investment in Capital One Shopping, which is another direct merchant relationship.  Capital One February 20, 2024 investor conference call.

75.    Capital One CEO Fairbank described in detail the intent of the company in acquiring the Discover network.  Capital One's plans to move Discover's credit card business to Capital One post-acquisition over time.  He explained to his investors the post-acquisition plan as follows:

So here's what we're going to do on the credit card side, we will move some of our credit card volume over to the network to enhance its scale and will lean hard into further building the brand and the perceived acceptance of the credit card network here in the United States. We will also work to build greater international acceptance. Over time, we will move a growing portion of our Credit Card business to the Discover Network.

In total, across debit and credit, we expect to add over 25 million Capital One cardholders and over $175 billion in Capital One purchase volume by 2027. This will be a step-change in the scale of the network and we will grow it from here. This injection of volume and investment in the network will help Discover by competitive with the leading networks.

76.    And Capital One CFO Andrew Young further clarified the company's planned "migration" of Capital One cards to the Discover Network:

On the network, we intend to begin migration of credit card and debit spend to the Discover Network in the second quarter of 2025. We expect that migration to drive $175 billion of purchase volume to the Discover Network by 2027, resulting in $1.2 billion of synergies. And while we see additional revenue opportunities across the combined enterprise, we have not modeled any revenue synergies beyond those I just covered.

77.    Without the acquisition as proposed, Capital One is unwilling to enter the separate transaction platform market.  Suggesting that the expenditure of capital and expertise required in such a venture would be prohibitive, CEO Fairbank explained:

26

I'll conclude this morning on slide 27. Pulling way up, the acquisition of Discover is a singular opportunity. It propels Capital One into the global payment network space, something that would be nearly impossible to achieve organically. The combination will create a leading Consumer Banking and payments platform with unique capabilities, powerful brand, and a franchise of more than 100 million customers that spans the marketplace.

It combines high growth credit card and banking businesses with a global payments network at scale. It leverages Capital One's technology transformation and digital capabilities across the significantly larger customer franchise. It delivers compelling financial results, and it offers the potential for unparalled *[sic]* strategic and economic upside over the long-term.

78.    The company's network entry capability drives its $34 Billion dollar acquisition proposal.  For CEO Fairbank it is the "Holy Grail."  He freely admits that processing networks are profitable, necessary and expensive to create in the credit card business.  Development of such a network independently by Capital One would in Fairbank's opinion be "impossible" He explains:

First of all, the network side of the business. We all kind of revel in the fact that a network is a very, very rare asset. There are very few of them and it's just-I don't think people are going to be building any of these any time soon because it's such a chicken-and-egg problem to ever get one started. You show up at a merchant and say, we'd like to sign up for our new network and they say, how many customers do you have? And we go, well that's where you come in. And the customers are asking similar questions.

So it's a remarkable thing to build a network. And over 40 years, patiently, they built a network with really just essentially universal acceptance here in the United States. So, that was something that was remarkable. And we have always had a belief that the Holy Grail is to be able to be an issuer with one's own network so that one can deal directly with merchants. And from merchants to consumers, it's all part of one comprehensive relationship. So, that is part of- that's one part of the appeal. We sort of had awe about that aspect.

79.    The company publicly described its post-acquisition plan. Network ownership will enable Capital One to retain its card processing relations with Visa and Mastercard. Capital One's plan was described in detail.  The following post-acquisition policies were announced:

I mean, we were very drawn to this deal and kind of way at the top of the list was the benefit of having a network. And we are very excited about that. And we look

27

at that rare unique asset that Discover has and we're struck by the fundamental challenge it faces is a scale problem. They've done everything else the best they can. They just don't have enough scale, even in the US, to get what they want done; and then, of course, international as well.

So in looking at that rare and valuable asset, for us to be able to take whatever volume we can and add it to that really helps in a way that's even more than adding scale to almost anything is helpful. But the network business, there's a reason it's called a network because it has network effects associated with it. Or to use another metaphor, there's a flywheel that gets turning when you add more scale to that.

I do want to also pull up though and say that we have been partners with

Visa and Mastercard for a long time. They have built a breathtaking, amazing international global network that stands alone in a lot of the reach, acceptance, brand and capabilities it has; and we're reverential about that. And so, we're talking about making a network that is way, way smaller than those and give it a chance to get a threshold, scale, pick up momentum; and, as we said, over time, we're going to lean in and build the strength, the acceptance, the brand, and the perceived acceptance and credibility of this network, and then keep moving volume over as we get more traction along the lines.

But I do believe as far out as we can see, I think that partnering with Visa and Mastercard would be important. They'll be very important partners with use because there's a lot of value that they still can add to our customers. And at the end of the day, we're going to always work backwards from what works best for our customers and how we can win on their behalf."

80.    The company had been candid as to its plans post - acquisition.  It intends to negotiate agreements with Visa and Mastercard over Capital One credit card interchange fees, while at the same time competing directly with Visa and Mastercard in the payment processing market. Fairbank was asked about this unique competitive anomaly at the recent investor conference call:

> Q... And then on the credit side, following up on the comments that you just made, since there are elements of the payments business where you'll be competing with Visa and Mastercard, given some of those partner versus competitor dynamics, is it fair to conclude that they've sort of been receptive to that sort of coexistence of that partner versus competitor relationship?
>
> [Fairbank:] And just to comment on that for a second, one of the nice things about vertical integration is that one can add the network margin which otherwise was something the networks collect. We get a chance to add the network margin and that enhances the

vertical integration. I mean, that just enhances the economics of the move.

With respect to partnering and competing with Visa and Mastercard at the same time; we have strong relationships with both Visa and Mastercard that go back to our founding days. And it's not unusual for companies to be both competitors and customers of one another. In the credit card markets alone, U.S. Bank and Amex are, for example, a clear example. Amex is a network for US Bank and other card issuers, but Amex also competes against those same companies as a card issuer.

So PayPal and Mastercard; PayPal issues their credit card on Mastercard. So, there, it is-in the marketplace, it's not unusual for companies to be both competitors and customers of one another in different aspects of what these companies do. And we don't see this as an issue. In fact, we look forward to continuing to partner with Visa.

And with respect to your question about how we would go out and market our national banking strategy, I think it's going to feel exactly like it does now, Capital One with a very salient story, talking about the full service digital-first bank that we have with Capital One and we've got the same story. And along the way, we're to partner with Visa and Mastercard in this journey.

81.    Discover does not plan to compete with Visa or Mastercard.  Capital One has a record of collusion with Mastercard and Visa. Capital One is a defendant in hundreds of pending lawsuits alleging illegal anticompetitive collusion with markets dominated by the big four banks: Bank of America, Citibank, Chase and Capital One.

## B.    The Announced Acquisition Faces Backlash and Competitive Concerns

82.    Reaction from regulators to the announced acquisition was negative.  The news triggered opposition both from regulators and industry participants.  On February 25, 2024, members of Congress, including Senator Elizabeth Warren, wrote a letter to the Board of Governors of the Federal Reserve and the Office of the Comptroller of the Currency urging them to block the transaction:

With nearly $500 billion in assets, Capital One is currently the nation's ninth-largest bank. By acquiring Discover, Capital One would add a network of 305 million cardholders to its base of more than 100 million customers, consolidating the credit card market and limiting customer choice. This acquisition would make

29

Capital One the nation's sixth-largest bank, and largest credit card issuer, with over $200 billion in outstanding credit card loans.

83.    The letter noted that both Capital One and Discover have a long history of regulatory compliance failures together with significant instances of customer exploitation.

> Capital One has a concerning history of mistreating consumers. In 2012, the CFPB ordered the bank to refund $140 million to 2 million consumers with low credit scores and low credit limits who were misled into paying for costly add-on products. In 2019, Capital One's shoddy risk-management practices resulted in a hacker gaining access to more than 100 million credit card applications and customer accounts. Discover's record of compliance failures also raises concerns. In October 2023, it reached a sweeping consent order with the FDIC that required further action to address "'violations of, and consumer harm related to' various consumer financial laws."

84.    Senator Josh Hawley concurred, urging blockage of the acquisition in a February 21, 2024 letter to the Department of Justice:

> On February 19, Capital One-one of America's largest and most powerful banks-announced its plans to acquire Discover Financial Services for $35 billion, bringing 300 million Discover card users into its existing fold of 100 million customers. As the Wall Street Journal reported, this merger will create "the third largest credit-card issuer by purchase volume" and the "sixth largest U.S. bank by assets."
>
> This is destructive corporate consolidation at its starkest. If consummated, this merger will create a new juggernaut in the credit card market, with unprecedented powers to extort American consumers. This cannot be allowed to happen.

85.    In April, 2025, the Board of Governors of the Federal Reserve System entered a consent order with Discover and assessed a fine of $100 million dollars for overcharging certain interchange fees from 2007 through 2023.  Discover is repaying those fees to affected customers.

86.    The increased concentration in the credit card market, to which Lawmakers objected, will pose an ongoing threat to consumers post – acquisition.  Capital One will own and control Discover's payment processing network notwithstanding its position as a direct horizontal competitor with Mastercard and Visa.

30

## VIII.   THE PAYMENT NETWORK AND ISSUER REWARDS BARRIER TO ENTRY

87.     Both the general-purpose Credit Card Market and the Transaction Platform Payment Processing Market have near insurmountable barriers to entry created by a series of network effects and feedback loops. This barrier to entry is called the Payment Network and Issuer Rewards Barrier to Entry ("PNIRBE").

88.     Consumers will not apply for and use a credit card that is not widely accepted by merchants from whom they routinely purchase goods and services.  The more merchants that accept a particular card, the more valuable it becomes.  A direct network effect results from a critical mass of merchants accepting the card.

89.     Credit card issuing banks require a payment processing network to facilitate transactions.  Acceptance of an issuer's cards depends on the size of the network that processes payments on the cards.  The Payment network's bank clients (open-loop) are able to contract with merchants to provide transaction processing services—and thus generate interchange fees—only if their cards are accepted by a critical mass of merchants.  Without widespread acceptance of its branded cards, a payment processor is not viable.  The result is a self-reinforcing feedback loop that creates a powerful barrier to entry in the Transaction Platform relevant Market.

90.     Rewards and related perks to cardholders are funded with interchange income. Visa and Mastercard set interchange fees based on transaction volume among other criteria.  A new credit card issuer would have to compete with established credit card issuers with sufficient transaction volume to command lower set fees pursuant to the Visa / Mastercard interchange rate schedules.  A new issuer's ability to fund rewards and offer competitive cardholder benefits is greatly diminished.

91.     Visa and Mastercard together maintain a near monopoly share of the Credit Card Payment Processing Market.  No new entrants have entered the market in the last several decades.

92.     Visa and Mastercard have the market power to prevent entry into the Credit Card Payment Processing Market.  They are insulated from competition as the direct result of the entry

31

barriers so long established and reinforced by their existing anti-competitive, albeit highly profitable, contracts with their member banks and card- issuing co-partners.

## IX.    THE ACQUISITION WILL SUBSTANTIALLY DECREASE COMPETITION, CAUSING INJURY TO PLAINTIFFS.

93.    The merger, if it goes forward, will strengthen the powerful and profitable Visa / Mastercard duopoly that controls both the card payment and the card processing markets.  The long-standing barriers to entry will be strengthened and competition foreclosed.

### A.    The Acquisition Will Increase Market Concentration in the General-Purpose Credit Card Market.

94.    The proposed acquisition will consolidate two of the top credit card issuers in the General purpose Credit Card Market. This will reduce price competition.

95.    Capital One is a bank.  Its proposed acquisition of Discover will fund higher card issuance and processing market share, which in turn will generate higher consumer product and service prices.  Regulators agree.  As the February 25, 2024 letter from Congress to the Federal Reserve Board of Governors and the Office of the Comptroller of Currency points out:

> With nearly $500 billion in assets, Capital One is currently the nation's ninth-largest bank. By acquiring Discover, Capital one would add a network of 305 million cardholders to its base of more than 100 million customers, consolidating the credit card market and limiting consumer choice. This merger would make Capital One the nation's sixth largest bank, and largest credit card issuer, with over $200 billion in outstanding credit card loans. [ranked by Outstandings]

> This merger is bad for consumers. The banking and credit card industries are already highly concentrated: today, the six largest bank holding companies control more assets than all other bank holding companies combined. Consolidation in the banking sector causes "high prices and more fees, lower deposit rates, less access to credit, bank branch closures, and job cuts." In addition to harming consumers and small businesses,  bank consolidation poses increased systemic risk in the financial system, "reducing the number of smaller banks and creating even more too big to fail banks."

### B.    The Proposed Acquisition Will Eliminate Discover as a Vertically Integrated Competitor with Capital One.

96.    Capital One's acquisition of Discover will eliminate competition from one of the only two vertically integrated competitors in the General purpose Credit Card Market.  Discover

will disappear.  American Express will be left as the last vertically integrated independent credit card provider.  Because they retain all of the interchange fees charged through their credit cards, Discover and American Express are able to compete by providing higher rewards generated from the savings in processing and interchange costs.

97.    The effect of Capital One's competitive edge gained from access to the new interchange-free network will be substantial.  Discover will cease to provide pricing pressure borne of its integrated system.  With little incentive to reduce interchange fee prices, Capital One will apply the higher fee margin to its bottom line.

98.    The proposed acquisition will eliminate significant general purpose credit card competition from a vertically integrated firm (Discover), leaving only one such firm, (American Express), in the market. The result will be to lessen competition in the United States general purpose Credit Card Market.  This will lessen (likely to eliminate entirely) downward price pressure from one of the two remaining vertically integrated general purpose credit card companies in the market.

## C.    The Acquisition Will Facilitate Horizontal Collusion in the Credit Card Payment Processing Market

99.    The proposed acquisition would realign Capital One as a horizontal competitor of Visa and Mastercard in the Transaction Platform credit card payment processing market.

100.    Although Capital One could move its existing cardholders off the Visa and Mastercard networks and vertically integrate through the Discover network, the company has stated that it will not shift all of its credit cards to Discover but rather will continue its longstanding allegedly anti-competitive relationship with Visa and Mastercard while at the same time issuing credit cards that use the Discover Network. Remember, the higher the Visa Mastercard interchange fees are the greater the profit incentive is for Capital One who can charge its cardholders the fees with impunity even though it doesn't have to pay them.

101.    This mixed model creates a dangerous incentive for the companies to collude on interchange fees. To avoid the threat that Capital One will move its cardholder base to Discover, Visa and Mastercard may provide Capital One with a larger share of the interchange fees in

exchange for refraining from expanding the Discover credit card payment processing network. Moreover, because Capital One will no longer face competition from vertically integrated Discover, it will have a lesser incentive to remit its increased share of the interchange fees to its customers as rewards.

102.    The net effect will be higher interchange fees, which are passed on to cardholders; fewer rewards because of decreased competition from vertically integrated Discover; and the continued insulation of Visa and Mastercard from competition in the Credit Card Payment Processing Market.

### D.    The Acquisition Will Result in Direct, Horizontal Agreements Among Competitors In The Credit Card Payment Processing Market.

103.    At present, Capital One is contractually aligned with Visa and Mastercard. After the proposed acquisition, Capital One will become a competitor with Visa and Mastercard.  It is per se illegal under the antitrust laws for Capital One to maintain agreements with its direct, horizontal competitors on prices, particularly interchange fees.  Nonetheless, Capital One concedes that it will continue to maintain its express agreements with Mastercard and Visa while it operates the former competitor Discover's credit card payment network.

104.    Capital One's stated intent to acquire Discover, a direct competitor, will surely constitute a naked restraint of trade.

## X.  CLAIMS FOR RELIEF

### COUNT I:  Section 7 of the Clayton Act

105.    Plaintiffs hereby incorporate the allegations in paragraphs 1 – 104 above as if fully set forth herein.

106.    The effect of the proposed acquisition may be to substantially lessen competition, or tend to create a monopoly, in interstate trade and commerce in the Transaction Platform Credit Card Payment Processing Market and the General Purpose Credit Card Market in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

107.    Unless enjoined, the proposed acquisition may, and most probably would, have the following potential effects in the relevant markets, among others:

(a)    actual and potential competition between Capital One and Discover may be eliminated;

(b)    the elimination of Discover, a significant competitor in a non-trivial transaction, may substantially lessen competition, or tend to create a monopoly in the Credit Card industry;

(c)    competition in general among other credit card providers may be lessened substantially;

(d)    consumer prices for goods and services purchased with credit cards may be higher than they otherwise would be;

(e)    consumer choices may be lower than they otherwise would be; and

(f)    card processing prices and quality may be lessened.

108.    The acquisition as announced will have the further effect of protecting Capital One from competition and competitive entry in both the Credit Card Payment Processing Market and the General Purpose Credit Card Market.

109.    If approved, the acquisition will result in the elimination of competition from one of the two large vertically integrated credit card issuers in the General Purpose Credit Card Market, leaving only American Express after the acquisition. This in turn will result further in increased interchange fees and related processing fees, which fees are ultimately incurred by card holders and consumers in the form of inflated product and service prices.

110.    Discover is an independent, vertically integrated credit card company.  It retains the interchange fees it charges through its branded cards. As such, Discover is a competitor in the relevant markets in which it competes directly on price and service quality with Capital One.  As such Capital One and other general purpose credit Card market participants must compete on price and service with regard to interchange fees and rewards remitted to customers. The proposed acquisition will negatively impact its ability to compete in the relevant markets in which Capital One does business.

111.    The proposed acquisition will have the effect of reducing competitive pressure on Capital One to remit greater and more valuable credit card rewards and services to its customers

in order to maintain and obtain market share. The continued existence of independently owned Discover encourages competitive price pressure on Visa and Mastercard, as they must compete with Discover to decrease interchange fees that are charged to merchants and passed on to cardholders. After the acquisition, this competitive price pressure will greatly diminish.

112. The acquisition will create significant incentives to collude with its competitors as alleged herein. The likelihood of collusion on interchange fees, rewards paid, interest rates charged and related services will be materially increased.

113. The acquisition may increase concentration in the General Purpose credit Card Market, which will result in higher prices, including in the form of fewer and less valuable rewards, higher interest rates, higher purchase prices (as a result of passed on interchange fees), and higher credit card fees.

114. Capital One intends to maintain its agreements with Visa and Mastercard after the acquisition. Those extensive written agreements include express agreements as price, output, and product features. Such agreements are horizontal restraints of trade that will be encouraged to proceed post-acquisition. As a result of this harm to competition, Plaintiffs will pay higher prices, receive fewer and less valuable credit card benefits, pay higher fees (including interchange fees) and receive reduced and less efficient credit card products.

115. Plaintiffs named herein have standing to bring these claims. Their injuries and potential losses constitute damage which the antitrust laws were intended to prevent. Their damages will be the result of competition negatively impacted by the acquisition sought to be approved herein. Plaintiffs therefore have antitrust standing to bring suit and to seek the relief sought herein.

116. The acquisition is a transaction in interstate commerce, as it involves the merger of two large credit card companies operating out of different states. Moreover, the acquisition will affect markets and products that use the instrumentalities of interstate commerce, including the Internet.

117.    Plaintiffs seek an injunction preventing the consummation of the acquisition. In the alternative, Plaintiffs seek divestiture, disclosure or other court-ordered relief to mitigate any post-merger anticompetitive harm resulting from Capital One's acquisition of Discover.

118.    Plaintiffs also seek to recover their costs of suit, including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Issue an injunction preventing the acquisition of Discover by Capital One, or in the alternative, requiring pre-closing divestiture or disclosure as may be necessary to remedy any anticompetitive effects of the combination;

B.    Enter a judgment declaring that Defendants have committed the violations of antitrust law alleged in this case;

C.    Award Plaintiffs the cost of this action, including reasonable attorneys' fees and expenses and expert fees;

D.    Award declaratory relief;

E.    Grant such further relief as this Court may deem just and proper.


Dated:  April 30, 2025              ALIOTO LAW FIRM
                                    */s/ Joseph M. Alioto*
                                    Joseph M. Alioto, Sr.
                                    Attorneys for Plaintiffs

1

**ADDITIONAL PLAINTIFFS' COUNSEL**

2

3    Jeffery K. Perkins (CSBN 57996)
     1550-G Tiburon Boulevard, #344
4    Tiburon, California  94920
     Telephone:  (415) 302-1115;
5    Email: jefferykperkins@aol.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28