ALIOTO LAW FIRM
JOSEPH M. ALIOTO (SBN 42680)
TATIANA V. WALLACE (SBN 233939)
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone: (415) 434-8900
Email:  jmalioto@aliotolaw.com
         twallace@aliotlaw.com

[ADDITIONAL COUNSEL LISTED ON LAST PAGE]

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD FRY, KATHERINE ARCELL, JAN MARIE BROWN, JOSE BRITO, ROSEMARY D'AUGUSTA, PAMELA FAUST, CAROLYN FJORD, DONALD FREELAND, MICHAEL MALANEY, LEN MARAZZO, LISA MCCARTHY, TIMOTHY NEIBOER, DEBORAH PULFER, BILL RUBINSOHN, SONDRA RUSSELL, CLYDE STENSRUD, PAMELA WORD, CHRISTINE WHALEN, | Case No. 25-3769 |
| Plaintiffs, | **PLAINTIFFS' APPLICATION FOR AN ORDER TO SHOW CAUSE WHY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT THEREOF** |
| v. | Date: |
| CAPITAL ONE FINANCIAL CORPORATION, | Time: |
| Defendant. | Courtroom: |

## PLAINTIFFS' NOTICE OF MOTION FOR
## <u>ORDER TO SHOW CAUSE</u>

Plaintiffs, by and through their undersigned attorneys, respectfully move the above Court

for an Order to Show Cause why an injunction should not issue prohibiting the closing of the

proposed acquisition of Discover Financial Services, Inc. ("Discover") by Defendant Capital One

Financial Corporation ("Capital One") and delaying it for a reasonable time to allow Plaintiffs to complete limited meaningful discovery and be heard by the Court on Plaintiffs' Motion for Injunction, to be filed once Plaintiffs have been able to complete discovery.

In addition to delaying any immediate closing, Plaintiffs also seek by this motion to prevent Defendant Capital One from doing anything to further the elimination of Discover; prohibit Defendant from any joint operation with Discover; prohibit Defendant from terminating the employment of any executives or employees of Discover; and require that Capital One and Discover be operated separately and apart pending a trial on the merits pursuant to Rule 65.

This Motion is made pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and Fed. R. Civ. P. 65(b).

Because of the serious, immediate, and irreparable harm Plaintiffs may suffer in the absence of the requested relief, Plaintiffs request a hearing. The grounds for this Motion are that the Plaintiffs are substantially threatened with injury and damage and may suffer irreparable harm if the acquisition of Discover is not prohibited; the threatened harm to the Plaintiffs if not prohibited by this Court greatly outweighs the threatened injury to the Defendant if the injunction issues; there is a high probability that Plaintiffs will succeed on the merits in establishing that the proposed acquisition violates United States antitrust laws; and the public interest strongly favors granting the injunction.

This Motion is based on the Complaint and all of the files and proceedings herein.

DATED:        May 1, 2025

                              */s/ Joseph M. Alioto*
                              ALIOTO LAW FIRM
                              Joseph M. Alioto
                              Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONALD FRY, KATHERINE ARCELL,
JAN MARIE BROWN, JOSE BRITO,
ROSEMARY D'AUGUSTA, PAMELA
FAUST, CAROLYN FJORD, DONALD
FREELAND, MICHAEL MALANEY, LEN
MARAZZO, LISA MCCARTHY,
TIMOTHY NEIBOER, DEBORAH
PULFER, BILL RUBINSOHN, SONDRA
RUSSELL, CLYDE STENSRUD, PAMELA
WORD, CHRISTINE WHALEN,

     Plaintiffs,

  v.

CAPITAL ONE FINANCIAL
CORPORATION,

     Defendant.

Case No. 25-3769

**MEMORANDUM IN SUPPORT OF MOTION**

## TABLE OF CONTENTS

**CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................ 4

   A.   Trend Towards Concentration ........................................................................ 4

   B.   Proposed Acquisition ..................................................................................... 4

   C.   Regulatory Review and Basis for Expedited Relief ....................................... 6

III.   STANDARD OF REVIEW .............................................................................. 6

IV.   ARGUMENT .................................................................................................... 8

   A.   Plaintiffs are Likely to Succeed on the Merits ............................................... 8

     1.   The Clayton Act Codifies Congress' Intent to Prohibit Mergers Through Direct Private Actions Such as This ......................................................................... 9

     2.   Plaintiffs' Burden Under Section 7 Is Exceptionally Low ............................... 9

     3.   Plaintiffs Need Only Show a Reasonable Probability of Lessening of Competition in a Single Product Market; Defendants Must Establish There Will Be No Lessening of Competition in Any Market .................................................... 12

     4.   The Acquisition May Substantially Lessen Competition in Relevant Markets ............ 13

   B.   Plaintiffs are Likely to be Irreparably Harmed if the TRO is not Granted. ...................... 13

   C.   The Balance of Equities Tips Decidedly in Plaintiffs' Favor. ........................................... 14

   D.   Public Interest Is Served by Injunctive Relief ................................................. 15

   E.   A Bond Should Not Be Required ..................................................................... 16

   F.   Expedited Discovery Is Warranted; Defendants Will Suffer No Harm If Compelled to Participate in Specific and Limited Discovery Proposed by Plaintiffs ........................... 16

V.    CONCLUSION .................................................................................................. 17

## TABLE OF AUTHORITIES

*Cases*

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ................................................................6

*American Trucking Ass'n, Inc. v. City of Los Angeles,*
559 F.3d 1046 (9th Cir. 2009) .............................................................. 13

*Barahona-Gomez v. Reno,*
167 F.3d 1228 (9th Cir. 1999) .............................................................. 15

*Boardman v. Pac. Seafood Grp.,*
822 F.3d 1011 (9th Cir. 2016) ......................................................... 13, 14

*Brown Shoe Co. v. United States,*
370 U.S. 294 (1962) ................................................................... passim

*California v. American Stores Co.,*
492 U.S. 1301 (1989) .................................................................. passim

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,*
600 F. Supp. 1326 (E.D. Mich. 1985) .................................................. 14

*F.T.C. v. Elders Grain, Inc.,*
868 F.2d 901 (7th Cir. 1989) ................................................................ 9

*Hosp. Corp. of Am. v. F.T.C.,*
807 F.2d 1381 (7th Cir. 1986) ......................................................... 8, 11

*Johnson v. Couturier,*
572 F.3d 1067 (9th Cir. 2009) .............................................................. 13

*Moltan Co. v. Eagle-Picher Indus., Inc.,*
55 F.3d 1171 (6th Cir. 1995) ............................................................... 15

*Olin Corp. v. F.T.C.,*
986 F.2d 1295 (9th Cir. 1993) .............................................................. 12

*Reno Air Racing Ass'n v. McCord,*
452 F.3d 1126 (9th Cir. 2006) ............................................................... 6

*Shell Offshore, Inc. v. Greenpeace, Inc.,*
709 F.3d 1281 (9th Cir. 2013) ............................................................... 6

*United States v. Aluminum Co. of Am.,*
377 U.S. 271 (1964) .................................................................. 3, 10, 11

*United States v. Cont'l Can Co.,*
378 U.S. 441 (1964) ..................................................................... 10, 11

*United States v. Falstaff Brewing Corp.,*
410 U.S. 526 (1973) ........................................................................ 3, 8

*United States v. Pabst Brewing Co.,*
384 U.S. 546 (1966) ...................................................................... 3, 11

*United States v. Philadelphia Nat'l Bank,*
  374 U.S. 321 (1963) ............................................................................ 2, 8, 12

*United States v. Von's Grocery Co.,*
  384 U.S. 270 (1966) .................................................................................. passim

*Unites States v. Topco Assocs.,*
  405 U.S. 596 (1972) ...................................................................................... 14

*Winter v. Nat'l Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ............................................................................................ 6

**Other Authorities**

1 Callman on Unfair Comp., Tr. & Mono. § 4:24 (4th Ed.) ...................................... 15

15 U.S.C. §26 ............................................................................................. 1, 6, 8

Clayton Antitrust Act (15 U.S.C. §18) ................................................................ passim

**Rules**

Fed. R. Civ. P. 65(c) ........................................................................................ 15

Fed. R. Civ. P. 1 ............................................................................................... 15

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Above-named Plaintiffs submit this memorandum of law in support of their motion for an order to show case ("OSC") preventing Capital One and Discover, during the pendency of this action, from consummating their merger described in the Complaint filed on April 30, 2025 by the Plaintiffs.   Plaintiffs further move this Court for an order to show cause setting a hearing to determine whether an injunction should be issued.

This is a private antitrust suit brought under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) for violation of the Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18).  This case challenges the proposed combination of the country's largest banks.  Capital One is one of the nation's largest issuers of Visa and Mastercard general purpose credit cards. It uses the Visa and Mastercard open-loop payment-card networks to process the transactions conducted on its issued cards. The Visa and Mastercard networks do not issue credit cards to cardholders. Instead, they license financial institutions such as Capital One to issue their trademarked cards. Discover and American Express, on the other hand, are closed-loop credit-card networks that directly issue cards to cardholders and process the transactions conducted on their cards. (Complaint ¶ 2).

The acquisition, at a $35 billion price, is now imminent, and if it succeeds, it will eliminate one of four dominant general purpose credit card firms in the Card Payment Processing  Networks, causing irreparable injury because Discover would be eliminated and would not be able to return. Visa, Mastercard, American Express, and Discover compete directly in this market. The proposed acquisition would give Capital One the largest credit card portfolio in the U.S., surpassing that of JPMorgan Chase. The Capital One - Discover combination would further concentrate an already highly concentrated market. Damage caused to the Plaintiffs and to the public at large by the potential elimination of Discover—Capital One's direct competitor—is substantial and

foreboding. (Complaint ¶ 3).  If permitted, one of the nation's largest issuers of credit cards, Capital One, will eliminate one of its main competitors and one of Visa and  Mastercard's only competitors in the related credit card payment processing market and will create a behemoth bank that  limits consumer choice and pushes up card rates.  The acquisition of Discover by Capital One would show the inherent conflict with Visa and Mastercard because Capital One, in the words of its CEO, would be both "partner and competitor" of Visa and Mastercard. Independent networking would be lost since Capital One would be in an insurmountable conflict of interest and more susceptible to coordinating pricing with Visa and Mastercard and less likely to vigorously compete against them. With regard to sales revenues in the credit card payment processing, the following charts demonstrate the rankings. (*Id.*)

The proposed acquisition will benefit the new bank, not the public, and will turn two important competitors of Visa and Mastercard into per se collaborators with them eliminating any incentive to compete vigorously in every step of the process that is supposed to use competition to obtain favorable terms, namely credit card rewards, for U.S. consumers.  The people challenging this acquisition are Capital One and Discover cardholders and other people who pay U.S. credit card fees; they are the precise people who will be harmed by the Defendant's acquisition, **expected to close on May 18, 2025**.

Plaintiffs respectfully request that the Court immediately issue an Order to Show Cause delaying any closing of the proposed acquisition of Defendant Discover by Defendant Capital One for a reasonable time, to allow Plaintiffs to complete discovery and to file and have their motion for injunction heard.

Plaintiffs have been forced to seek this immediate relief because on April 18, 2025,  Capital One and Discover announced that the Board of Governors of the Federal Reserve System and the

Office of the Comptroller of the Currency have approved Capital One's proposed acquisition of Discover. According to the Defendant's press release, "All required regulatory approvals to complete the transaction have now been received, and the transaction is expected to close on May 18, 2025."[1] Plaintiffs will suffer severe and irreparable harm if Capital One and Discover complete their closing before Plaintiffs have an opportunity to be heard.

The proposed elimination of Discover in a non-trivial transaction by its significant rival, Capital One, violates Section 7 of the Clayton Antitrust Act (15 U.S.C. §18) in that the effect of the sale, if allowed, may, and most probably will, substantially lessen competition in the general purpose payment card industry nationwide and which presently threatens the irreparable loss of a vigorous, popular, and expanding and growing competitor to the Plaintiffs and the public. Consequently, the proposed acquisition is prohibited by the binding authority of the Supreme Court of the United States and must be enjoined as a matter of law. *See Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 (1963), *United States v. Aluminum Co. of Am.*, 377 U.S. 271 (1964), *United States v. Von's Grocery Co.*, 384 U.S. 270 (1966), *United States v. Pabst Brewing Co.,* 384 U.S. 546 (1966), and *United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973).

Because of this acquisition, Capital One and Discover are "likely to reduce available consumer choice while providing no increase in industry capacity, jobs or output. It was for these reasons, among others, Congress expressed its disapproval of successive acquisitions. Section 7 was enacted to prevent even small mergers that added to concentration in an industry." *Brown Shoe,* 370 U.S. at n.72. Plaintiffs respectfully submit that less competition among the industry will

---

[1] *See* https://investor.capitalone.com/news-releases/news-release-details/capital-one-receives-final-regulatory-approvals-acquisition

allow major players to ramp up fees charged to merchants for access to payment networks, minimize the rewards companies offer their customers and eventually lead to higher costs for businesses and consumers.

Because of the serious, immediate, and irreparable harm Plaintiffs may suffer in the absence of the requested relief, Plaintiffs request a hearing, and Plaintiffs request immediate injunctive relief to avoid the irreparable harm that would result if Capital One and Discover close on the acquisition.

## II.    FACTUAL BACKGROUND

This is an antitrust lawsuit challenging the proposed acquisition of Discover by Capital One.  Defendant Capital One is one of America's largest banks and the third largest issuer of Visa- and Mastercard-branded credit cards. Defendant Discover is a digital banking and payment services company that issues Discover Cards and operates its own vertically integrated payment processing network, the Discover Network and presently competes with Capital One in the general purpose credit card market and with Visa and Mastercard in the credit card payment processing market, and the challenged acquisition would substantially lessen competition in both markets, harming Plaintiffs (who are Capital One and Discover cardholders).

### A.    Trend Towards Concentration

The current trend toward concentration, the lessening of competition and the tendency to create a monopoly in the relevant markets is unmatched, unparalleled, and dangerous.  *See* Complaint ¶¶ 23-44, 87-92

### B.    Proposed Acquisition and Its Anticompetitive Effects

On February 19, 2024, Capital One and Discover announced that they had entered into a definitive agreement under which Capital One would acquire Discover in an all-stock transaction valued at $35.3 billion. (Complaint ¶¶ 70-86).

As Plaintiffs allege, Capital One's proposed acquisition of Discover will substantially decrease competition, causing injury to Plaintiffs.  If it goes forward, the combination will strengthen the powerful and profitable Visa / Mastercard duopoly that controls both the card payment and the card processing markets.  The long-standing barriers to entry will be strengthened and competition foreclosed.  (Complaint ¶¶ 45-69, 93-104).  The proposed acquisition will consolidate two of the top credit card issuers in the General-Purpose Credit Card Market, which will reduce price competition.  It will eliminate Discover's competition, allowing Capital One to buy its way into the general-purpose card network market, without having to compete for a share of that market.  The acquisition will create the largest U.S. credit card issuer, making Capital One the eighth-largest bank in the nation with approximately $660 billion in assets, along with access to Discover's payments network, and is also expected to generate $1.2 billion in annual revenue for Capital One. (*Id.*).  In addition, the acquisition of Discover by Capital One will transform two key competitors that put price pressure on Visa and Mastercard  with respect to interchange fees—the key metric from which consumer welfare derives for U.S. credit cardholders.  Without the acquisition, Discover acts as an important price check on Visa and Mastercard as to overall interchange fee levels and constrains card issuers like Capital One on the level of rewards it provides to cardholders, while Capital One provides an important competitive constraint on the share of interchange fees that go to issuers (and, eventually cardholders as rewards) instead of to payment processors like Mastercard and Visa, which work through the pressure of competition, including competition from Discover with Mastercard and Visa, competition from Discover with Capital One, and competitive negotiation by Capital One with Mastercard and Visa as to interchange fee agreements. (*Id.*)

C.    **Regulatory Review and Basis for Expedited Relief**

The Department of Justice ("DOJ") expressed concerns about the acquisition's impact on competition in the subprime sector and on consumers with no credit history yet chose not to block the deal.  On April 18, 2025, the Federal Reserve Board and Office of the Comptroller of the Currency signed off on the acquisition.[2]  The deal is now set to close on May 18th, 2025.  But where the DOJ and other regulatory agencies have now approved the acquisition, Plaintiffs have no choice but to move the Court for an order to show cause enjoining the acquisition and for an order setting an injunction hearing, in order to protect their rights and to prevent irreparable harm that they will suffer if the acquisition is consummated.  On April 30, 2025, Plaintiffs filed suit under Section 16 of the Clayton Antitrust Act, charging that the acquisition of Discover by Capital One is a violation of Section 7 of the Clayton Antitrust Act (Complaint), together with the current motion.

III.    **STANDARD OF REVIEW**

The purpose of an injunction is to preserve the status quo and prevent irreparable harm before an injunction hearing is held.  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006).  Plaintiffs seeking an injunction must establish: (1) likely success on the merits; (2) likely irreparable harm absent such relief; (3) that the balance of equities favors them over the defendant; and (4) that injunctive relief is in the public interest.  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008).  Even "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then an injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two

---

[2] The OCC's approval is conditional on Capital One submitting a plan within 120 days after the deal closes to address the root causes of any enforcement actions against Discover and to remediate any harm.

*Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d 1281, 1291 (9th Cir. 2013).

Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.  In the Ninth Circuit, courts engage in a sliding scale approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).  One common iteration of this approach, the "serious questions" test, recognizes that a stronger showing of the balancing of hardships factor lessens the burden for likelihood of success on the merits. *Id.* Under the serious questions test, an injunction is proper upon a showing of "serious questions going to the merits," so long as the balance of hardships "tips sharply in [plaintiff's] favor." *Id.*

A simple fact that competition has been eliminated is tantamount to a per se showing of the element of irreparable injury necessary to support the injunctive relief.[3]  As a result, the fact that a "significant rival" and competitor will be eliminated by the acquisition of Discover is sufficient proof, in and of itself, of irreparable injury for purposes of the requested injunctive relief to prohibit the acquisition.  Importantly, the Supreme Court has held that the moving party's required showing does not rise to the burden of proof necessary at trial.

---

[3] *See California v. American Stores*, 492 U.S. 1301, 1304 (1989) (Justice O'Connor confirmed this principle in her opinion staying mandate:
"I agree with both the District Court and the Court of Appeals that applicant has made an adequate showing of irreparable injury. *See* 872 F.2d at 844 (**lessening of competition 'is precisely the kind of irreparable injury that injunctive relief under section 16 of the Clayton Act was intended to prevent'**) (citations omitted). Even if applicant is free to seek other appropriate injunctive relief on remand, the possibility of irreparable injury, it seems to me, remains to the extent that such other relief would be inadequate to remedy the injury…" (Emphasis added)).

IV.    **ARGUMENT**

A.    **Plaintiffs are Likely to Succeed on the Merits**

This lawsuit ultimately presents the Court with a singular issue: The Clayton Act outlaws all mergers and acquisitions where "the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly." 15 U.S.C. § 18.  Under the Supreme Court's binding precedent, Congress' use of this expansive definition was meant to ensure that any growing trend towards concentration in markets was stopped in its incipiency, even before it was clear whether a merger would—or did in fact—lessen competition, reflecting a policy judgment that competition among numerous market participants is preferable to concentrating markets through mergers and acquisitions. *See, e.g., Brown Shoe*, 370 U.S. at 317; *Von's Grocery,* 384 U.S. at 274; *American Stores,* 495 U.S. at 271, 275 (1990).

Capital One and Discover are direct horizontal competitors and are major direct competitors with respect to certain specified markets. (Complaint ¶¶ 23-44).  Thus, Capital One's acquisition of Discover "may" substantially lessen competition because it will eliminate the direct competition between Discover and Capital One. (Complaint ¶¶ 93-104).  Moreover, a loss of competition in general purpose card markets could be catastrophic to consumers and may have such probable effects as causing higher fees, reduction of rewards, among others.  *Id.*  Under Section 7, the elimination of a rival is enough.  *Hosp. Corp. of Am. v. F.T.C.*, 807 F.2d 1381, 1385 (7th Cir. 1986).

The proposed acquisition will also allow Capital One to buy its way into the general payment card network market, rather than enter through competition, in contravention of the U.S. Supreme Court's decisions in *Brown Shoe Co*. and *Falstaff*.  The merger of firms with such market shares is alone sufficient to show that the merger may result in market concentration and

8

substantially lessen competition. *See Philadelphia Nat'l Bank,* 374 U.S. at 364 & n.41. Indeed, such facts are sufficient to show "prima facie unlawfulness" under Section 7. *Id.*

        1.     <u>The Clayton Act Codifies Congress' Intent to Prohibit Mergers Through Direct Private Actions Such as This</u>

As part of Congress' statutory scheme to prohibit all mergers and acquisitions that may substantially lessen competition, Congress established a private right of action as an important means to stop anticompetitive mergers that, through incremental combinations and concentrations, slowly but surely destroy competition and tend to lead to monopolies and oligopolies. Section 16 provides in relevant part that "[a]ny person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage" from an unlawful merger or acquisition. 15 U.S.C. § 26. As explained in *American Stores*, the Clayton Act's provisions "manifest a clear intent to encourage vigorous private litigation against anti-competitive mergers." 492 U.S. 275. By encouraging private litigation to police unlawful mergers, Congress sought to "subject mergers to searching scrutiny" through lawsuits such as this. *Id.* Indeed, "[p]rivate enforcement of the [Clayton] Act was in no sense an afterthought; it was an integral part of the congressional plan for protecting competition*." Id.*

        2.     <u>Plaintiffs' Burden Under Section 7 Is Exceptionally Low</u>

To effectuate the Clayton Act's statutory scheme to stop economic concentration through merger and thereby "preserve competition among many small businesses," Congress enshrined an expansive definition of unlawful acquisitions. *Von's Grocery,* 384 U.S. at 277. Section 7 makes unlawful all mergers and acquisitions, the effect of which "may be substantially to lessen competition or tend to create a monopoly." 15 U.S.C. § 18. Congress' use of the term "may" in Section 7 was meant to ensure that litigants would not need to prove anticompetitive effects but would merely need to show a "reasonable probability" that competition would be lessened. *Brown*

*Shoe,* 370 U.S. at 323. Outlawing all mergers with merely a reasonable probability of lessening competition was a "necessary element in any statute which seeks to arrest restraints of trade in their incipiency and before they develop into full-fledged restraints violative of the Sherman Act." *Id.* at 323 n. 39.

Indeed, requiring a Clayton Act Plaintiff to show "certainty and actuality of injury to competition" would be "incompatible" with Section 7's aim to go beyond liability under the Sherman Act "by reaching incipient restraints." *Id.* That is why Section 7 ultimately requires merely a "prediction" as to whether competition may be lessened, and "doubts are to be resolved against the transaction." *F.T.C. v. Elders Grain, Inc.,* 868 F.2d 901, 906 (7th Cir. 1989).

Congress's expansive definition of unlawful mergers was not made by chance and there was no linguistic accident. Congress meant to "clamp down with vigor on mergers." *Von's Grocery,* 384 U.S. at 276. The very objective of Section 7 was to "prevent accretions of power," even those "which 'are individually so minute as to make it difficult to use the Sherman Act test against them.'" *Aluminum Co. of Am.,* 377 U.S. at 280. That is why a plaintiff's burden under Section 7 is particularly low. *American Stores,* 495 U.S. at 275. It is also why Supreme Court case after case has prohibited mergers with far less potential harm to competition than here.

In *Brown Shoe*, for example, the Court prohibited a merger between the 3rd and 8th largest shoe sellers in the United States, where the 8th largest manufactured less than 0.5% and retailed less than 2% of shoes. 370 U.S. at 298. The Court held that it could not "avoid the mandate of Congress that tendencies toward concentration in industry are to be curbed in their incipiency." *Id.* at 345.

In *United States v. Cont'l Can Co.,* the Court prohibited an acquisition of the 6th largest competitor by the 2nd largest, where the acquisition would increase the acquiring entity's market share from 21.9% to 25%. 378 U.S. 441, 461 (1964).

In *Aluminum Co. of Am.,* 377 U.S. at 280–81, the Court prohibited the acquisition of the 9th largest producer of aluminum conductor, which held only 1.3% of the market, by the largest producer of aluminum conductor, which held 27.8% of the market. The Court held that "[p]reservation of [the ninth-largest producer], rather than its absorption by one of the giants, will keep it 'as an important competitive factor,'" and thus, the small aluminum conductor producer with only 1.3% market share "seems to us the prototype of the small independent that Congress aimed to preserve" through Section 7.  377 U.S. at 281.

In *Von's Grocery,* the Court prohibited the merger of two grocery store chains, each with less than 5% of the market. Based solely on the market shares of the merging grocery store chains and the growing trend toward concentration in the market, the Court held that "these facts alone are enough to cause us to conclude . . .  that the [merger] did violate § 7." 384 U.S. at 274.

In *Pabst Brewing*, the Court held unlawful the acquisition of the eighteenth largest brewer by the 10th largest brewer, which when combined, became the 5th largest brewer with a combined market share of only 4.49%.

These Supreme Court cases have not been overruled nor even diminished by later opinions, and they dictate beyond any doubt that the proposed Capital One-Discover combination is unlawful.  For example, in *Hosp. Corp. of Am.*, 807 F.2d at 1385, Judge Posner of the Seventh Circuit, citing *Brown Shoe*, *Aluminum Co. of Am.*, *Von's Grocery*, and *Pabst Brewing*, acknowledged that the continuous line of Supreme Court precedent, taken together, prohibited "any nontrivial acquisition of a competitor." He further observed that "The elimination of a

11

significant rival was thought by itself to infringe the complex of social and economic values conceived by a majority of the Court to inform the statutory words 'may . . . substantially . . . lessen competition.'" *Id.* This long line of cases is clear: concentration in economic markets through acquisitions is precisely what Congress aimed to stop. All mergers and acquisitions that may substantially lessen competition or tend to create a monopoly are unlawful.

      3.    <u>Plaintiffs Need Only Show a Reasonable Probability of Lessening of Competition in a Single Product Market; Defendants Must Establish There Will Be No Lessening of Competition in Any Market</u>

Section 7 of the Clayton Act requires merely the reasonable probability of lessening of competition "in any line of commerce" or "in any activity affecting commerce" anywhere in the country. 15 U.S.C. § 18. The Supreme Court has recognized that an unlawful acquisition might affect multiple relevant markets. Courts must consider whether the acquisition might lessen competition in any one of them. *See, e.g., Brown Shoe,* 370 U.S. at 325–28 (assessing whether merger might lessen competition in men's, women's, and children's shoes); *Aluminum Co. of Am.,* 377 U.S. at 276 (recognizing submarkets for aluminum and copper conductors, and finding merger might lessen competition in aluminum conductor market); *Cont'l Can,* 378 U.S. at 457–58 ("That there may be a broader product market made up of metal, glass and other competing containers does not necessarily negative the existence of submarkets of cans, glass, plastic or cans and glass together, for 'within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes.'"); *Olin Corp. v. F.T.C.,* 986 F.2d 1295, 1304 (9th Cir. 1993) ("Even accepting [Defendant's] argument that there is a relevant market comprised of all pool sanitizers, this does not preclude identification of a relevant submarket comprised solely of dry sanitizers.").

Capital One may not defeat a showing that the proposed acquisition may substantially lessen competition in one market by showing a potential increase in competition in another market.

*See Philadelphia Nat'l Bank,* 374 U.S. at 370 (holding that "anticompetitive effects in one market" cannot be justified by "procompetitive consequences in another"). So long as Plaintiffs can identify a single product market in which competition might be substantially lessened, Plaintiffs must prevail. *Id.* Thus, Defendants must establish that there is no reasonable probability that the acquisition might lessen competition in each of the relevant product markets.

4.    <u>The Acquisition May Substantially Lessen Competition in Relevant Markets</u>

Here, the strong probability, if not certainty, is that Capital One's acquisition of Discover could substantially lessen competition, and Plaintiffs will show far beyond their minimal burden that competition will be lessened in a number of relevant markets. (Complaint ¶¶ 23-31, 93-104).

**B.    Plaintiffs are Likely to be Irreparably Harmed if the Requested Relief is not Granted.**

Plaintiffs in this case include Capital One and Discover cardholders, who have a direct interest in ensuring that Discover is preserved as a competitive option for them. Plaintiffs are debit and credit card holders and are threatened and fear future injury and damage in that their consumer choice will be eliminated, prices and rates may be increased, rewards may be lowered or eliminated, and the quality of the services may be decreased, and the benefits of competition will be substantially and adversely impacted if not completely eliminated. Plaintiffs have various credit and debit cards including Capital One and Discover. Each of the plaintiffs has been encouraged by the Congress and the Supreme Court to bring this case and to ensure that what competition exists will not be further eroded. All of these threats and fears are imminent because the defendants have announced that they intend to close on May 18, 2025. The plaintiffs intended to rely upon the government to protect their interests but because the government has withdrawn the only way to protect again the fear and threat of anticompetitive conduct is to file this separate, private suit pursuant to the encouragement of both the Congress and the Supreme Court of the United States.

13

We believe that by reason of the proposed acquisition we will be irreparably harmed because Discover will be eliminated as a competitor and presumably will not be able to come back. On the other hand, if Capital One wishes to enter a networking market by competition rather than acquisition we would encourage additional competition. (Complaint ¶¶ 9-10).

Under Section 16 of the Clayton Act, Plaintiffs are entitled to injunctive relief to prevent "threatened loss or damage by a violation of the antitrust laws," including the possible lessening of competition in a relevant market under Section 7. The "lessening of competition 'is precisely the kind of irreparable injury that injunctive relief under Section 16 of the Clayton Act was intended to prevent.'" *Am. Stores Co.*, 492 U.S. at 1304*; see also Boardman v. Pac. Seafood Grp.,* 822 F.3d 1011, 1023 (9th Cir. 2016). Thus, because Capital One's acquisition may substantially lessen competition in the relevant markets, Plaintiffs have shown threatened irreparable harm and are entitled to injunctive relief under Section 16.

### C.     The Balance of Equities Tips Decidedly in Plaintiffs' Favor.

Because Plaintiffs are likely to succeed on the merits and will suffer irreparable harm absent the injunction, the equities are firmly on the side of Plaintiffs. If an injunction is not granted and the acquisition of Discover were allowed to proceed, yet Plaintiffs ultimately prevail at trial and divestiture is required, Plaintiffs will be irreparably harmed during the pendency of this case and competition within these important markets across the U.S. will be irretrievably lost. On the other hand, if the Court issues an injunction merely until an accelerated trial on the merits is heard, yet the Plaintiffs ultimately lose on the merits, Defendants will only face possible delay of the acquisition.[4] *See Johnson v. Couturier*, 572 F.3d 1067, 1082 (9th Cir. 2009) (recognizing some

---

[4] *See generally* William J. Baer, Reflections on 20 Years of Merger Enforcement Under the Hart-Scott-Rodina Act, October 31, 1996, available at https://www.ftc.gov/news-events/news/speeches/reflections-20-years-merger-enforcement-under-hart-scott-rodino-act (discussing how mergers cannot be "unscrambled" after they are consummated).]

consequences to defendant to be outweighed by likely harm to plaintiff; preliminary injunction granted); *accord American Trucking Ass'n, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1059 (9th Cir. 2009).

It is much less disruptive of the industry and less harmful to competition to maintain the status quo and delay an acquisition, than to allow a merger to proceed immediately only to order divestiture and undue the unlawful merger later. *See, e.g., Pac. Seafood Grp.,* 822 F.3d at 1023. Breaking up a consummated merger is difficult if not impossible.  Among other things, civil litigation seeking divestiture and damages from a consummated merger can take years to resolve, which makes efforts to "unscramble" the "eggs" impractical. *Id.*

Defendants' inconvenience can be even further reduced because Plaintiffs are willing to agree to an expedited discovery and pretrial schedule with trial on the merits in early 2026.  *See, e.g., Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,* 600 F. Supp. 1326, 1332 (E.D. Mich. 1985) *aff'd,* 753 F.2d 1354 (6th Cir. 1985) (minimizing harm to defendant by setting matter for trial within three months of issuance of preliminary injunction).  The equities weigh heavily in favor of the entry of an injunction, and the third element of the analysis is satisfied.

### D.    Public Interest Is Served by Injunctive Relief

The antitrust laws are the foundation of our free enterprise system. Economic and legal principles enunciated and dating from Adam Smith to Justice Marshall uniformly hold that competition – whether it be in the marketplace of goods and services or the concomitant marketplace of ideas – best serves the public interest.  "Antitrust laws . . . are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United States v. Topco Assocs.*, 405 U.S. 596, 610 (1972).

Moreover, the public interest is strongly in favor of effective enforcement of the antitrust laws and the preservation of competition whenever and wherever possible. "[P]ublic injury necessarily results whenever there is an assault upon the principle of free and unhampered competition, as expressed in the antitrust laws . . . Therefore, the complaint need not allege injury to the public; the allegation is superfluous." 1 Callman on Unfair Comp., Tr. & Mono. § 4:24 (4th Ed.).

### E.    A Bond Should Not Be Required

A bond is not mandatory under Fed. R. Civ. P. 65(c) but is within the discretion of the District Court. *Barahona-Gomez v. Reno,* 167 F.3d 1228 (9th Cir. 1999); *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (district court has discretion to require posting of security). In holding that no bond was required in *Reno,* the Court recognized the importance of the public interests underlying the suit and "the unremarkable financial means of the [Plaintiffs] as a whole." *Id.* The Sixth Circuit, cited to in *Reno*, is in accord. In *Moltan,* the court held that the posting of security under Rule 65(c) was not required due to (1) the strength of the plaintiffs' case and (2) the strong public interests involved. 55 F.3d at 1176.

Just as in *Reno* and *Moltan*, the Court should waive the requirement of a bond. Plaintiffs do not have the financial means to post security, and thus the requirement of a bond could well foreclose Plaintiffs' ability to bring this important case.

### F.    Expedited Discovery Is Warranted; Defendants Will Suffer No Harm If Compelled to Participate in Specific and Limited Discovery Proposed by Plaintiffs

Rule 26 requires the parties "without awaiting a discovery request" to provide specified initial disclosures, as well as "develop a proposed discovery plan" and "agree upon a disclosed discovery plan." In order to be ready to try this case on the merits expeditiously, Plaintiffs need little discovery and request only the production of the Hart-Scott-Rodino documents already

16

collected and delivered to the DOJ, documents related to the post-acquisition impact on competition, and depositions of executives at Capital One and Discover.

Plaintiffs propose a simple and direct discovery plan and agree to commit to the most efficient deposition schedule and most convenient accommodations to both witnesses and counsel. If this discovery is not permitted, it will be contrary to the spirit and letter of Rule 1 of the Federal Rules of Civil Procedure which requires "the just, speedy, and inexpensive determination of every action and proceeding" and have the chilling effect of stalling this case, delaying justice and preventing Plaintiffs from moving forward to collect evidence and preparing for trial.

## V.    CONCLUSION

For all of the reasons set out in this memorandum, the Court should grant the requested relief and issue an order requiring Defendant Capital One to show good cause why the acquisition should not be stayed, pending a trial on the merits.

DATED:    May 1, 2025            ***/s/ Joseph M. Alioto***

ALIOTO LAW FIRM
Joseph M. Alioto
Tatiana V. Wallace

Attorneys for Plaintiffs

17