ALIOTO LAW FIRM
JOSEPH M. ALIOTO (SBN 42680)
TATIANA V. WALLACE (SBN 233939)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Email: jmalioto@aliotolaw.com
        twallace@aliotlaw.com

[ADDITIONAL COUNSEL LISTED ON LAST PAGE]

Attorneys for Plaintiffs


## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DONALD FRY, et al., | Case No. 4:25-cv-03769-HSG |
|          Plaintiffs, | |
| | **PLAINTIFFS REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPLICATION FOR AN ORDER TO SHOW CAUSE WHY INJUNCTION SHOULD NOT ISSUE** |
|    v. | |
| CAPITAL ONE FINANCIAL CORPORATION, | |
|          Defendant. | **Hon. Haywood S. Gilliam, Jr.** |

**TABLE OF AUTHORITIES**

**Cases**

*Aluminum Co. of Am.*, 377 U.S. at 276 ................................................................................ 13

*Am. Stores*, 495 U.S. 271 (1990) ......................................................................................... 9

*Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc*., 784 F.2d 1325 (7th Cir. 1986) ........ 11

*Bogus v. American Speech & Hearing Ass'n*, 582 F.2d 277 (3d Cir. 1978) ................................ 7

*Brown Shoe Co. v. United States*, 370 U.S. 294 ................................................................... 11

*Brown v. Board of Education of Topeka* 347 U.S. 483 (1954) .................................................. 13

*California v. Am. Stores Co*., 492 U.S. 1301, 1304 (1989). ..................................................... 7

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co*., 600 F.Supp. 1326 (E.D. Mich.
    1985) ................................................................................................................... 16

*Clemens v. ExecuPharm Inc*., 48 F.4th 146  (3d Cir. 2022) ..................................................... 7

*Cont'l Can*, 378 U.S. at 457–58 .......................................................................................... 13

*FTC v. Proctor & Gamble Co.,* 386 U.S. 568 (1967). .............................................................. 9

*Griswald v. Connecticut* 381 U.S. 479 (1965), .................................................................... 13

*Hawaii v. Standard Oil Co.,* 405 U.S. 251 (1972) .................................................................. 7

*HCA v. F.T.C*., 807 F.2d 1381, 1385 (7th Cir. 1986) ............................................................. 10

*Katz v. United States* 389 U.S. 347 (1967) ......................................................................... 13

*Loving v. Virginia* 388 U.S. 1 (1967) .................................................................................. 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). .............................................................. 8

*Miranda v. Arizona* 384 U.S. 436 (1966). ............................................................................ 13

*Olin Corp. v. F.T.C*., 986 F.2d 1295 (9th Cir. 1993). ............................................................. 13

*Pac. Seafood.*, 822 F.3d at 1023 ....................................................................................... 15

*Susan B. Anthony List v. Driehaus,* 573 U.S.149, (2014)) ....................................................... 7

*United States v. Aluminum Co. of America*, 377 U.S. 271 ...................................................... 11

*United States v. Borden* 347 U.S. 514 (1954) ...................................................................... 11

*United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86 ................................................ 11

*United States v. Falstaff Brewing Corp.,* 410 U.S. 526 (1973) ............................................. 9, 14

*United States v. General Dynamics Corp.*, 415 U.S. 486 ....................................................... 11

*United States v. Pabst Brewing Co*., 384 U.S. 546 ................................................................ 11

*United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 ........................................................ 10

*United States v. Von's Grocery Co*., 384 U.S. 270 (1966) ...................................................... 12

*United States v. Von's Grocery Co.*, 384 U.S. 270 ............................................................... 11

Unites States v. Topco Associates, 405 U.S. 596 (1972) ......................................................... 16

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464
    (1982). ................................................................................................................. 8

*Zenith Radio Corp., v. Hazeltine Research, Inc*., 395 U.S. 100  (1969). ..................................... 7

**Statutes**

15 U.S.C. § 18 ......................................................................................................... 8, 9, 12

15 U.S.C. § 26 ............................................................................................................... 7

# PRELIMINARY STATEMENT

The Defendants' Opposition to the plaintiff's motion for an injunction pending trial took the low road instead of confronting the facts in this case and the binding decisions by the Supreme Court of the United States, none of which have been overruled.

In this case, plaintiffs challenge the acquisition of Discover by Capital One as a violation of Section 7 of the Clayton Act which prohibits any acquisition, which "may" lessen competition in any line of commerce "in any section of the country."

Capital one and Discover are two of the largest credit card companies in the United States.  Capital One has the second largest number of cardholders at over 115 million cardholders.  Discover, the fourth largest, has over 66 million cardholders.  Together they will have the largest number of cardholders at over 181 million cardholders.

In terms of purchase volume, Capital One is the fourth largest with over $610 billion of purchases and Discover, number six, has over $212 billion.  Together, they will be the third largest in purchase volume with over $822 billion.

In outstanding balances, or money owed, Capital One is in fourth place with more than $135 billion and Discover is in sixth place with over $102 billion.  Together, they will have the largest outstanding balance with over $237 billion.

In the credit card payment processing market, Discover is number four with sales revenues of more than $15 billion.  There are only four major credit card payment processing networks in the United States.  They are American Express with sales revenues of more than $60

billion, Visa with sales revenues of over $32 billion, Mastercard with over $25 billion and Discover with over $15 billion.

Instead of entering the processing market by competition, Capital One intends to enter by acquisition; namely paying more than $35 billion for Discover.  Under the Supreme Court decisions in *Falstaff* and *Proctor and Gamble*, the effort by a company of significant economic strength to enter a market by acquisition or by "product-extension" were enjoined even though the acquisition was a mirror image of what existed before.

The Plaintiffs in this case are cardholders.  Some have both Capital One and Discover cards.  Others have Capital One cards.  In this highly concentrated industry, both as to credit cards and as to processing, it is realistically a high probability that card holders are threatened with the potential of elimination of a substantial amount of competition between the credit card companies to compete for the cardholder's business, including a downturn in quality and services and even output.

Capital One is a licensee of both Visa and Mastercard.  By purchasing Discover, a competitor of Visa and Mastercard, Capital One will be a simultaneous partner and competitor, logically unable to serve both masters.

The proposed acquisition has horizontal (banking and credit card lending) and vertical (credit card and debit payments networks) dimensions that create market power that the new bank would have the ability and incentive to exercise its power to disadvantage its customers and competitors.  These markets have been consolidating, and the proposed acquisition eliminates a credit card lending competitor, creates more concentrated credit card lending markets and highly

concentrated credit card lending markets for consumers with non-prime credit scores who have fewer choices and pay higher prices.

## ARGUMENT

### 1.  PLAINTIFFS HAVE ARTICLE III AND ANTITRUST STANDING

Defendants' assertion that Plaintiffs have no standing to assert claims under Section 7 of the Clayton Antitrust Act fails.

Under Section 16 of the Clayton Antitrust Act, Plaintiffs "need only demonstrate a significant **threat of injury** from an impending violation of the antitrust laws" in order to establish Article III standing.  *Zenith Radio Corp., v. Hazeltine Research, Inc*., 395 U.S. 100, 130 (1969). In *Clemens v. ExecuPharm Inc*., 48 F.4th 146, 153 (3d Cir. 2022) the trial court rejected a rule that "would require plaintiffs to wait until they had sustained an actual injury to bring suit" as "[t]his would directly contravene the Supreme Court's holding in Susan B. Anthony List, which authorizes suits based on a 'substantial risk' that the harm will occur.") (quoting *Susan B. Anthony List v. Driehaus,* 573 U.S.149, 158 (2014)).

Plaintiffs have standing now because they are *threatened* with loss or damage from reduced competition that might arise if the merger is allowed to proceed, and they are entitled to pursue injunctive relief to prevent that harm.  15 U.S.C. § 26; *California v. Am. Stores Co*., 492 U.S. 1301, 1304 (1989).  It is a bedrock principle that a plaintiff threatened with irreparable harm must be able to bring suit in time to prevent irreparable harm from occurring.  Plaintiffs do not seek damages but instead seek injunctive relief under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, which authorizes such relief for any person who demonstrates "threatened loss or damage by a violation of the antitrust laws."  This provision imposes a lower threshold requirement than

Section 4 of the Clayton Antitrust Act, which requires a showing of actual present injury to "business or property." *Hawaii v. Standard Oil Co.,* 405 U.S. 251 (1972); *Bogus v. American Speech & Hearing Ass'n,* 582 F.2d 277 (3d Cir. 1978). Since Section 16 requires only "'threatened' injury," injunctive relief to stop a merger is available "even though the plaintiff has not yet suffered actual injury." *Zenith*, 395 U.S. at 130.

Plaintiffs in this case include Capital One and Discover cardholders, who have a direct interest in ensuring that Discover is preserved as a competitive option for them. Plaintiffs are debit and credit card holders and are threatened and fear future injury and damage in that their consumer choice will be eliminated, prices and rates may be increased, rewards may be lowered or eliminated, and the quality of the services may be decreased, and the benefits of competition will be substantially and adversely impacted if not completely eliminated. Plaintiffs have various credit and debit cards including Capital One and Discover. Plaintiffs have standing under Article III because they are threatened with impending injury if the acquisition is not enjoined. Plaintiffs will suffer "in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Plaintiffs will "personally ... suffer some actual or threatened injury." *Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464, 472 (1982). This is not "injury-in-fact" since the acquisition has not happened yet.

## 2. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

This lawsuit ultimately presents the Court with a singular issue: The Clayton Act outlaws all mergers and acquisitions where "the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly." 15 U.S.C. § 18. Under the Supreme Court's binding precedent, Congress' use of this expansive definition was meant to ensure that any growing trend towards concentration in markets was stopped in its incipiency, even before it was clear whether a

merger would—or did in fact—lessen competition, reflecting a policy judgment that competition among numerous market participants is preferable to concentrating markets through mergers and acquisitions. *See, e.g., Brown Shoe*, 370 U.S. at 317; *Von's Grocery Co*., 384 U.S. at 274; *Am. Stores*, 495 U.S. 271, 275 (1990).

Conspicuous by its absence is any effort by the defendants to contest the similarity of the market share in the Supreme Court decisions which the plaintiffs charted and attached in the complaint, attached hereto as Exhibit 1.

The defendants try to minimize the acquisition by claiming that "it will simply be owned by Capital One and not Discover." Complaint, pg. 15, line 30. The Supreme Court has dealt with such an issue and enjoined such an acquisition which resulted in a simple mirror image of what existed before. The argument was made and rejected in *United States v. Falstaff Brewing Corp.,* 410 U.S. 526 (1973) and *FTC v. Proctor & Gamble Co.,* 386 U.S. 568 (1967).

### A. Plaintiffs Have Adequately Alleged a Violation of Section 7 of the Clayton Antitrust Act

Section 7 of the Clayton Antitrust Act provides in pertinent part as follows: "No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital ... where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or tend to create a monopoly." 15 U.S.C. § 18.

The elimination of Discover from the market violates section 7 of the Clayton Antitrust Act. This merger is unlawful because the combination has resulted in market concentrations dramatically in excess of the Supreme Court's longstanding decisions prohibiting non-trivial combinations between significant rivals that may tend to increase concentration in any relevant

market, thereby lessening competition. In addition, given the current pernicious trend toward consolidation in the banking industry, it is clear that this transaction may result in a substantial increase in concentration, continuing to harm the Plaintiffs and consumers in general.

Plaintiffs allege that Capital One and Discover are direct competitors with respect to certain specified markets. Thus, Capital One's acquisition of Discover "may" substantially lessen competition because it will eliminate the direct competition between Discover and Capital One. Under Section 7, as interpreted by the Supreme Court, in a situation involving a non-trivial amount, a trend or existing concentration and the elimination of a significant rival was found to be unlawful. In this case, all of those elements exists.  There is no question that $35 billion is a non-trivial amount.  There is no question that the credit card market and the credit card processing market are controlled by very few companies.  The top five companies in the credit card market control almost 90% of that market. In the processing market, there are only four recognizable competitors, the top two of which have almost 90% of the market.   The reliance by the Defendants on the Supreme Court's decision in *General Dynamics* completely misconstrues that case and does not in any way lessen the force of the other Supreme Court decisions, all of which was noted in the decision by Judge Posner, formerly Chief Judge of the 7th Circuit.  Because of the importance laid on by the defendants, it is important to have the full quote by Judge Posner that demonstrates that the decisions by the Supreme Court in the 60's and 70's are binding, have not been overruled, and that the subsequent decision in 1974 in General Dynamics decision does not in any way limit the binding force of the earlier cases.  As Justice Posner said in *HCA v. F.T.C.*, 807 F.2d 1381, 1385 (7th Cir. 1986):

> "The Commission may have made its task harder (and opinion longer) than strictly necessary, however, by studiously avoiding reliance on any of the Supreme Court's section 7 decisions from the 1960s except *United States v. Philadelphia Nat'l Bank*,

374 U.S. 321, 83 S. Ct. 1715, 10 L. Ed. 2d 915 (1963), which took an explicitly economic approach to the interpretation of the statute. The other decisions in that decade--in particular *Brown Shoe Co. v. United States*, 370 U.S. 294, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962); *United States v. Aluminum Co. of America*, 377 U.S. 271, 84 S. Ct. 1283, 12 L. Ed. 2d 314 (1964); *United States v. Von's Grocery Co.*, 384 U.S. 270, 86 S. Ct. 1478, 16 L. Ed. 2d 555 (1966), and *United States v. Pabst Brewing Co*., 384 U.S. 546, 86 S. Ct. 1665, 16 L. Ed. 2d 765 (1966)--seemed, taken as a group, to establish the illegality of any nontrivial acquisition of a competitor, whether or not the acquisition was likely either to bring about or shore up collusive or oligopoly pricing. The elimination of a significant rival was thought by itself to infringe the complex of social and economic values conceived by a majority of the Court to inform the statutory words "may ... substantially ... lessen competition.

       None of these decisions has been overruled. Although both *United States v. General Dynamics Corp.*, 415 U.S. 486, 94 S. Ct. 1186, 39 L. Ed. 2d 530 (1974), and *United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86, 95 S. Ct. 2099, 45 L. Ed. 2d 41 (1975) (both discussed in our recent decision in *Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc*., 784 F.2d 1325, 1336-37 (7th Cir. 1986)), refused to equate the possession of a significant market share with a significant threat to competition, these cases involved highly unusual facts, having no counterpart in this case, that required discounting large market shares. In *General Dynamics* the shares were of current sales (of coal) made pursuant to long-term contracts entered into a long time ago; future sales would depend on uncommitted reserves, and one of the acquired firms had no uncommitted reserves. In *Citizens & Southern* the acquired banks were already under the effective control of the acquirer (they were its "de facto branches"), so that the formal merger had little competitive significance."

Plaintiffs identified a long line of Supreme Court cases which prohibited mergers with far less potential harm to competition than here. Concentration in economic markets through acquisitions is precisely what Congress aimed to stop. All mergers and acquisitions that may substantially lessen competition or tend to create a monopoly are unlawful.

The defendants suggest without any authority that the abrupt decisions by certain regulatory bodies not objecting to the acquisition is somehow relevant to this case. It is not. The Supreme Court has been careful to make plain that the private actions are wholly apart from any government action on the same topic. *United States v. Borden* 347 U.S. 514 (1954).

As Plaintiffs' motion shows, Capital One's acquisition of Discover easily satisfies the Section 7 standard. Given Congress' clear mandate to prohibit all mergers and acquisition, the effect of which "may be substantially to lessen competition, or to tend to create a monopoly," 15 U.S.C. § 18, the Supreme Court has repeatedly struck down mergers with far less risk of lessening competition than is the case here.

In enacting and amending §7 of the Clayton Act, "Congress sought to preserve competition among many small businesses by arresting a trend towards concentration in its incipiency before that trend developed to the point that a market was left in the grip of a few big companies." *United States v. Von's Grocery Co*., 384 U.S. 270, 277 (1966) [emphasis added]. The line of Supreme Court cases relying upon this principle of law has never been overruled and has remained controlling since 1962.

In the 1980's during the Reagan administration, a number of officials including William Baxter and Robert Bork expressed their dissatisfaction with the decisions by the Supreme Court by formulating guidelines that were different from the Supreme Court holdings. Those guidelines, attempting to displaces the Supreme Court decisions, have been very successful in doing so. But in 2002, the former Chairman of the FTC admitted that the Guidelines are not the law and are not binding on anyone. At that time, he said: "

"The [Merger] Guidelines lack the force of law. They formally bind no one – not the courts, not other countries, not even the Department of Justice. Yet they have exerted enormous influence on the antitrust enforcement community and the courts in the United States."[1]

The defendant in this case seeks to rely on those guidelines and avoid the law.

---

[1] Timothy J. Muris, Former Chairman of the Federal Trade Commission, "On the Occasion of the Celebration of the Twentieth Anniversary of the 1982 Merger Guidelines, United States Department of Justice" (June 10, 2002) (emphasis added); see also

The defendants also suggest that the decisions by the Supreme Court are antiquated and somehow not binding on the lower courts.  There were many famous cases decided during that time period, which, of course, stand as the law of the United States and have not been overruled. The following cases, like the Supreme Court antitrust cases under Section 7 of the Clayton Act are binding and have not been overruled: *Brown v. Board of Education of Topeka* 347 U.S. 483 (1954); *Miranda v. Arizona* 384 U.S. 436 (1966); *Katz v. United States* 389 U.S. 347 (1967); *Loving v. Virginia* 388 U.S. 1 (1967); *Griswald v. Connecticut* 381 U.S. 479 (1965),.

Here, contrary to Defendants' assertions, Plaintiffs' relevant geographic and product markets have been adequately defined and alleged in detail as being the credit card issuing market, the payment process market and the United States.

Courts must consider whether the acquisition might lessen competition in any one of these markets and possible submarkets. *See, e.g., Brown Shoe*, 370 U.S. at 325–28 (assessing whether merger might lessen competition in men's, women's, and children's shoes); *Aluminum Co. of Am.*, 377 U.S. at 276 (recognizing submarkets for aluminum and copper conductors, and finding merger might lessen competition in aluminum conductor market); *Cont'l Can*, 378 U.S. at 457–58 ("That there may be a broader product market made up of metal, glass and other competing containers does not necessarily negative the existence of submarkets of cans, glass, plastic or cans and glass together, for 'within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes.'"); *Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1304 (9th Cir. 1993) ("Even accepting [Defendant's] argument that there is a relevant market comprised of all pool sanitizers, this does not preclude identification of a relevant submarket comprised solely of dry sanitizers.").

Capital One may not defeat a showing that the proposed acquisition may substantially lessen competition in one market by showing a potential increase in competition in another market. *See Phila. Nat'l Bank*, 374 U.S. at 370 (holding that "anticompetitive effects in one market" cannot be justified by "procompetitive consequences in another"). So long as Plaintiffs can identify a single product market in which competition might be substantially lessened, Plaintiffs must prevail. Id. Thus, Defendants must establish that there is no reasonable probability that the acquisition might lessen competition in each of the relevant product markets.

Here, Plaintiffs will establish that competition will be lessened in a number of relevant markets. [Dkt. 1, Compl. at ¶¶ 23-31, 93-104]. Plaintiffs need not show that Capital One directly competes with Discover in the network market in order to be considered a potential competitor. *See United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973); *see also FTC v. Procter & Gamble Co.*, supra. The Supreme Court held that any merger, whether it is horizontal, vertical, conglomerate, or, as in this case, a "product-extension merger," must be tested by the standard of § 7 of the Clayton Act, that is, whether it may substantially lessen competition, which requires a prediction of the merger's impact on present and future competition; potential economics cannot be used as a defense to illegality, as Congress struck the balance in favor of protecting competition. Id. at 577, 580.

Plaintiffs in this case include Capital One and Discover cardholders, who have a direct interest in ensuring that Discover is preserved as a competitive option for them. Plaintiffs are debit and credit card holders and are threatened and fear future injury and damage in that their consumer choice will be eliminated, prices and rates may be increased, rewards may be lowered or eliminated, and the quality of the services may be decreased, and the benefits of competition will

be substantially and adversely impacted if not completely eliminated. Plaintiffs have various credit and debit cards including Capital One and Discover.  All of these threats and fears are imminent because the defendants have announced that they intend to close on May 18, 2025.

The defendant's state in Footnote 7 that the HHI in plaintiffs presentation of the defendant's percentage of the credit card market is "inaccurate and artificially inflated."  To the contrary, Discover's percentage of the market is even greater than what plaintiffs stated for HHI.  Attached hereto as Exhibit 1 is a pie chart by Statista, a well-reputed statistics database company which shows the percentages of the credit card issuers in the United States and directly refutes the defendant's inaccurate statement.  Exhibit 1.

**B.  The Balance of Equities and Public Interest Favor Requested Relief**

Because Plaintiffs are likely to succeed on the merits and will suffer irreparable harm absent the requested relief, the equities are firmly on the side of Plaintiffs.  It is much less disruptive of the industry and less harmful to competition to maintain the status quo and delay an acquisition, than to allow a merger to proceed immediately only to order divestiture and undue the unlawful merger later. *See, e.g., Pac. Seafood.*, 822 F.3d at 1023.  Breaking up a consummated merger is difficult if not impossible.  Among other things, civil litigation seeking divestiture and damages from a consummated merger can take years to resolve, which makes efforts to "unscramble" the "eggs" impractical. *Id*.

Defendants' inconvenience can be even further reduced because Plaintiffs are willing to agree to an expedited discovery[2] and pretrial schedule with trial on the merits in late 2025. *See, e.g., Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 600 F. Supp. 1326, 1332 (E.D. Mich. 1985) aff'd, 753 F.2d 1354 (6th Cir. 1985) (minimizing harm to defendant by setting matter for trial within three months of issuance of preliminary injunction).

Finally, the antitrust laws are the foundation of our free enterprise system. Economic and legal principles enunciated and dating from Adam Smith to Justice Marshall uniformly hold that competition – whether it be in the marketplace of goods and services or the concomitant marketplace of ideas – best serves the public interest. "Antitrust laws . . . are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *Unites States v. Topco Associates*, 405 U.S. 596, 610 (1972).

Instead of coping with the facts and the Supreme Court decisions as applied to those facts, the defendant takes the low road and tries to libel the plaintiffs and plaintiff's counsel. The defendant's lack of knowledge didn't interfere with their malice. The Plaintiffs have been encouraged by Congress and specifically by the Supreme Court of the United States to bring cases against unlawful mergers that threaten them as well as others and in this way they sue for themselves, and as the Supreme Court has often said, as private Attorneys General.

---

[2] In order to be ready to try this case on the merits expeditiously, Plaintiffs need little discovery and request only the production of the Hart-Scott-Rodino documents already collected and delivered to the DOJ, documents related to the post-acquisition impact on competition, and depositions of executives at Capital One and Discover.

Erudition is no excuse for ignorance. Defendants mention a number of cases and incorrectly state their outcome without any knowledge whatsoever on their part. So as not to infringe on any confidentiality agreements, if the defendants wish to know the correct outcome of any of those cases, they can contact the defense counsel whose papers they copied. In each instance, the plaintiffs sought to have a trial. The plaintiffs never initiated any discussions for settlement with any defendant. In each case any discussion of settlement was initiated by the defendant. In this case, I declined the invitation.

Any attorney who actively pursues the prosecution of antitrust laws against large corporations needs to expect that they or their lawyers will not say nice things about them. More to the point, the great Adam Smith, father of free enterprise, in 1776 set out the warning: "…If he opposes them, on the contrary, and still more if he has authority enough to be able to thwart them, neither the most acknowledged probity, nor the highest rank, nor the greatest public services, can protect him from the most infamous abuse and detraction, from personal insults, nor sometimes from real danger, arising from the insolent outrage of furious and disappointed monopolists."

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully submit that the Court should grant the requested relief and enter the following injunctions: (1) delay the closing of the proposed acquisition of Discover Financial Services, Inc. by Defendant Capital One for a reasonable time to allow Plaintiffs to complete limited meaningful discovery and be heard by the Court on Plaintiffs' Motion for Injunction, to be filed once Plaintiffs have been able to complete discovery; (2) prevent Defendant Capital One from doing anything to further the elimination of Discover; (3) prohibit Defendant from any joint operation with Discover; (4) prohibit Defendant from

terminating the employment of any executives or employees of Discover; and (5) require that Capital One and Discover be operated separately and apart pending a trial on the merits pursuant to Rule 65.

DATED:     May 7, 2025             ***/s/ Joseph M. Alioto***

                                          ALIOTO LAW FIRM
                                          Joseph M. Alioto
                                          Tatiana V. Wallace

                                          Attorneys for Plaintiffs

Additional Plaintiff Counsel

Jeffery K. Perkins (CSBN 57996)
1550 – G Tiburon Blvd. #344
Tiburon, CA 94920