UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD FRY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORP., et al.,<br><br>    Defendants. | Case No. 25-cv-03769-HSG<br><br>**ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 5 |

Before the Court is Plaintiffs' request for preliminary injunction, Dkt. No. 5. The Court held a hearing on May 14, 2025, *see* Dkt. No. 39, and now DENIES the motion.

**I.  BACKGROUND**

Plaintiffs, 18 individual credit and debit card holders, filed a complaint on April 30, 2025, seeking to block the impending merger of Defendant Capital One Financial Corporation ("Capital One") and Discover Financial Services ("Discover"), based on alleged violations of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18. Dkt. No. 1 ("Compl."). Capital One issues credit cards to cardholders, and transactions using these cards are processed by credit card payment networks established by Visa and Mastercard, which do not issue credit cards themselves. *Id.* ¶ 2. By contrast, Discover issues credit cards and operates its own payment processing network. *Id.*

Capital One announced its plan to acquire Discover in February 2024. Compl. ¶ 70. After investigating the proposed merger, the Federal Reserve and Office of the Comptroller of the Currency (OCC) each approved it on April 18, 2025. *See* Dkt. No. 27 ("Opp."), Ex. A ("Fed. Order"), Ex. D ("OCC Order"). The Department of Justice also reviewed the potential competitive effects of the proposed merger and concluded that the proposal did not warrant an "adverse comment" under 12 C.F.R. § 250.182(c). *See* Fed. Order at 17. The approved merger is

set to close on May 18, 2025. *See* Compl. ¶ 1; Dkt. No. 27-2 ¶ 2.

On May 1, 2025, a few days after filing their complaint, Plaintiffs filed what appears to be a motion for preliminary injunction, styled as an "Order to Show Cause Why Injunction Should Not Issue." *See* Dkt. No. 5 ("Mot."). Plaintiffs seek to delay the closing of the merger pending a trial on the merits, and request a hearing on the preliminary injunction motion. *Id.* at 2. After the Court granted Defendant's unopposed request to expedite briefing, Defendant filed its opposition on May 6, 2025, and Plaintiffs filed their reply on May 7, 2025. On May 12, 2025, the Court set a hearing on Plaintiffs' motion, and directed the parties to provide controlling authority regarding Plaintiffs' evidentiary burden at the preliminary injunction stage. *See* Dkt. Nos. 32, 33. The parties timely filed their responses. Dkt. Nos. 36, 37. The Court held the hearing on May 14, 2025, and took the motion under submission. Dkt. No. 39.

## II.    LEGAL STANDARD

A plaintiff seeking preliminary relief must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III.    DISCUSSION

For the reasons outlined below, the Court finds that Plaintiffs' request is cursory, unsupported by any record evidence, and falls far short of meeting the standard for a preliminary injunction.

2

A.  **Likelihood of Success on the Merits**

Section 7 prohibits mergers where "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. A plaintiff must show a "'reasonable probability that the merger will substantially lessen competition' in any relevant market to prevail on the merits of an underlying § 7 claim." *Fed. Trade Comm'n v. Microsoft Corp.*, No. 23-15992, 2025 WL 1319069, at *6 (9th Cir. May 7, 2025) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). Courts apply a burden-shifting framework to Section 7 claims, under which the plaintiff must first establish a prima facie case that a merger is anticompetitive. *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015). "[A] prima facie case is established if the plaintiff proves that the merger will probably lead to anticompetitive effects in [the relevant] market." *Id.* at 785. The burden then shifts to the defendant to rebut the prima facie case. *Id.* at 783. If the defendant successfully rebuts the prima facie case, the burden of production shifts back to the plaintiff. *Id.*

The Court finds that Plaintiffs here have failed to show that they are likely to meet their prima facie burden under Section 7. As an initial matter, Plaintiffs mischaracterize—and substantially understate—the applicable standard. According to Plaintiffs, their burden is "exceptionally low," Mot. at 15, because Section 7 "requires merely a prediction as to whether competition may be lessened," *id.* at 16 (internal citation and quotation omitted). Similarly, they argue that they "must prevail" as long as they can "identify a single product market in which competition might be substantially lessened." *See* Mot. at 19. In framing these formulations, Plaintiffs appear to rely on the text of Section 7 forbidding mergers that "may" substantially lessen competition. *See* 15 U.S.C. § 18. But this position ignores the ample and longstanding controlling case law interpreting this statutory language. While a plaintiff's prediction of a merger's future impact on competition does not need to be certain to succeed on the merits under Section 7, it is "well established" that the prediction does have to be reasonably probable, rather than merely possible. *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984); *see also Brown Shoe*, 370 U.S. at 323, fn. 39 (quoting the final Senate Report on the Clayton Act, which clarified that the word "may" in Section 7 did not mean "mere possibility" but rather "reasonably

3

probability").

Moreover, Plaintiffs' lax framing contradicts what the Ninth Circuit has recognized specifically in the Section 7 context as "the settled principle that a preliminary injunction remains an extraordinary and drastic remedy." *See Microsoft Corp.*, 2025 WL 1319069, at *9. In *FTC v. Microsoft Corp.*, the Ninth Circuit recently upheld a district court's determination that the FTC was not entitled to preliminary relief because it had not "'raised serious questions regarding whether the proposed merger [was] likely to substantially lessen competition.'" *See id.* at *8 (quoting underlying opinion); *see also United States v. AT&T, Inc.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019) (holding that Section 7 requires plaintiffs to "show that the proposed merger is likely to substantially lessen competition, which encompasses a concept of "reasonable probability") (internal citations and quotations omitted). The court also affirmed the lower court's holding that the FTC failed to meet its burden to show that a substantial lessening of competition was likely under one theory because it did not "meaningfully rely on *evidentiary proof*" to support the theory. *See Microsoft Corp.*, 2025 WL 1319069, at *12 (emphasis in original). *Cf. Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1021, 1023 (9th Cir. 2016) (affirming district court's holding that plaintiffs adequately demonstrated a likelihood of success on the merits because plaintiffs had "adduced evidence" showing a "reasonable probability" that the acquisition would substantially lessen competition, including HHI analysis and expert declarations). Accordingly, the Court holds that in order for Plaintiffs to establish that they are likely to meet their prima facie burden under Section 7, they must proffer evidence that is at least sufficient to raise serious questions regarding whether the proposed merger is likely to substantially lessen competition in the alleged relevant markets.[1]

---

[1] The Court notes that *FTC v. Microsoft Corp.* addressed the FTC's request for preliminary injunctive relief under section 13(b) of the FTC Act, which places a lighter burden on the government than it does on private plaintiffs seeking such relief, because the FTC does not have to show irreparable harm. *See Microsoft Corp.*, 2025 WL 1319069, at *7. Although the 13(b) preliminary injunction standard does not apply here, both public and private plaintiffs must meet the "reasonable probability" requirement to prove their Section 7 claim on the merits. *Compare id.* at *6, *with DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018). Accordingly, the Section 7-specific aspects of *Microsoft Corp.* are relevant to this case. In addition, while the Ninth Circuit did not directly endorse the lower court's "likely to substantially lessen competition" formulation of the Section 7 standard, the Court adopts it here given that the

4

Requiring Plaintiffs to provide some evidentiary support going to the merits of their prima facie burden under Section 7, as opposed to allowing them to rely solely on conclusory allegations pled in their unverified complaint, accords with the Ninth Circuit's general treatment of a plaintiff's evidentiary burden on a preliminary injunction. *See, e.g.*, *Gonzalez v. Arizona*, 485 F.3d 1041, 1050 (9th Cir. 2007) (holding that plaintiffs had not demonstrated a likelihood of success on the merits because there was "no evidence in the record . . . to support [their] conclusion"); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088–89 (9th Cir. 1972) (holding that "[a] verified complaint or supporting affidavits may afford the basis for a preliminary injunction," but not if the facts alleged "consist largely of general assertions which are substantially controverted by counter-affidavits"); *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (holding that the district court did not abuse its discretion in finding that plaintiffs had raised serious questions going to the merits "given [p]laintiffs' substantial proffered evidence, which could be credited by a fact finder even in light of [d]efendants' evidence"); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (noting that the "clear showing" standard for a preliminary injunction requires "substantial proof [that] is much higher" than the summary judgment standard, which itself "would demand some evidence" going to the merits); *id.* at 976 (reversing court of appeals decision holding that plaintiffs had shown a likelihood of success "merely by alleging" their claim and without "rely[ing] on any evidence").[2]

Applying the correct standard, Plaintiffs fail to raise serious questions going to the merits of their prima facie case. Plaintiffs allege antitrust violations in two markets: 1) the credit card issuance and acceptance market, and 2) the credit card payment processing market. *See* Compl. ¶ 23. The motion for preliminary relief argues in a single, cursory sentence that if the proposed

---

Ninth Circuit affirmed the lower court's decision in full, and held that the court properly applied the Section 13(b) standard, which, as discussed, encompasses the Section 7 "reasonable probability" standard. *See Microsoft Corp.*, 2025 WL 1319069, at *8.

[2] Defendant further implies in its opposition that on a preliminary injunction motion, Plaintiffs must establish by a "preponderance of the evidence" that the merger is likely to substantially lessen competition. *See* Opp. at 11. But the Court does not have to decide the exact quantum of evidence required because, as discussed below, Plaintiffs fail to support their motion with any meaningful evidence at all.

merger is consummated, "the strong probability, if not certainty, is that Capital One's acquisition of Discover could substantially lessen competition" in these markets. Mot. at 19.[3] In making this argument, Plaintiffs offer no evidentiary support, and instead cite only to allegations in their unverified complaint. *See id.*[4] This showing is plainly insufficient to carry Plaintiffs' burden to establish a likelihood of success on the merits or raise serious questions going to the merits of their Section 7 claim. *See Taleff v. Sw. Airlines Co.*, 554 F. App'x 598 (9th Cir. 2014) (holding that plaintiffs seeking preliminary injunction were "required to make a fact-based showing of entitlement to that drastic and rarely awarded remedy," and that plaintiffs failed to meet this burden because they "proffer[ed] no support for their generalized claims of injury to consumers and competition").[5] On this basis alone, Plaintiffs are not entitled to preliminary relief.[6]

At any rate, the allegations in Plaintiffs' complaint also do not establish a likelihood of success on, or serious questions going to, the merits. In the complaint, Plaintiffs posit two central theories to argue that the proposed merger "will substantially decrease competition" in the relevant markets and strengthen the "Visa/Mastercard duopoly" that allegedly controls both. *See* Compl. ¶ 93. First, Plaintiffs allege that Capital One's acquisition of Discover will cause Discover to "disappear," leaving American Express as the only vertically integrated independent credit card

---

[3] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

[4] In their statement to the Court regarding the evidentiary standard, Plaintiffs maintain that they did present evidence in the form of "[e]vidence contained in the complaint" and a "[d]eclaration and exhibits in support" of their motion. *See* Dkt. No. 37 at 3. But as discussed, bare allegations in a complaint cannot satisfy Plaintiffs' burden to offer some "evidentiary proof" to support their prima facie showing under Section 7. *See Microsoft Corp.*, 2025 WL 1319069, at *12. And while Plaintiffs did attach three exhibits to their motion that appear to be letters from advocacy organizations or legislators discussing the proposed mergers, *see* Dkts. 5-2, 5-3, 5-4, their motion does not cite any of these exhibits or a single fact in them.

[5] As an unpublished Ninth Circuit decision, *Taleff v. Sw. Airlines Co.*, is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

[6] In their filing, which was submitted one day before the motion hearing, Plaintiffs offered to present "live witness testimony of the Plaintiffs in support of their Motion regarding the threat of injury and the irreparable harm." *See* Dkt. No. 37 at 3. The Court questions why Plaintiffs did not submit any of this evidence in the form of declarations or affidavits when they initially filed their motion. In any case, this generically-described testimony would not cure the other deficiencies that are fatal to Plaintiffs' preliminary injunction showing.

issuer in the general credit card market, which, in turn, "will lessen (likely to eliminate entirely) downward price pressure" in the market. *See id.* ¶¶ 96–98. Second, Plaintiffs allege that by turning Capital One into a horizontal competitor of Visa and Mastercard in the credit card payment processing market, the merger will enable Defendant to "collude" with Visa and Mastercard by continuing to issue Visa and Mastercard credit cards and charge higher interchange fees that are passed onto cardholders. *See id.* ¶¶ 99–104.

None of these general allegations can support a finding that Plaintiffs have raised serious questions as to whether proposed merger is likely to substantially lessen competition in either relevant market. Regarding their theory of anticompetitive effects in the credit card issuance market, Plaintiffs simply assert that the elimination of Discover as one of two vertically integrated credit card issuers in the market means that "Capital One will apply [a] higher fee margin to its bottom line," and "the result will be to lessen competition" in the market. Compl. ¶¶ 97–98. Such conclusory statements, unaccompanied by specific or verifiable facts, provide no basis on which the Court can plausibly find that the claimed substantial anticompetitive effects are likely, or that Plaintiffs have raised serious questions regarding the likelihood of such effects.

In addition, the very few specific and verifiable facts that Plaintiffs do allege as to the credit card issuance market are insufficient to meet Plaintiffs' burden as a matter of law. First, Plaintiffs argue that the simple fact that Discovery and Capital One are "major direct competitors" in the market by itself mandates a finding of potential anticompetitive effects because "the elimination of a rival is enough." *See* Mot. at 14 (citing *Hosp. Corp. of Am. v. F.T.C*, 807 F.2d 1381, 1385 (7th Cir.1986)). To bolster this claim, the complaint includes several charts displaying statistics that purport to show Capital One and Discover's respective market shares and rankings in the relevant markets. *See* Compl. ¶¶ 3, 4, 34, 39. But as other courts in this district have clarified numerous times, the Seventh Circuit case on which Plaintiffs rely does not override binding Supreme Court and Ninth Circuit precedent holding that market share statistics are not dispositive to the Section 7 analysis. A Section 7 plaintiff must specifically show that the proposed merger has a reasonable probability of anticompetitive effects in the relevant market. *See Microsoft Corp.*, 2025 WL 1319069, at *6; *Brown Shoe*, 370 U.S. at 325. To evaluate such

effects, courts must examine "the particular market—its structure, history and probable future," and market share statistics alone are "not conclusive indicators of anticompetitive effects." *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974). *See also Demartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055, 1065 (N.D. Cal. 2023) ("Merely alleging the elimination of a rival does not plausibly support an inference of an appreciable danger of anticompetitive effects in a relevant market."); *Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 WL 3790296, at *7 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011) (same).

      Similarly, none of the Supreme Court merger cases Plaintiffs cite support their assertion that mergers involving companies with certain market share percentages automatically "dictate beyond any doubt," *see* Mot. at 18, that a preliminary injunction is warranted. Instead, in the Ninth Circuit, mergers that increase the Herfindahl–Hirschman Index ("HHI") market share score more than 200 points and result in highly concentrated markets (those with an HHI above 2500) are presumed to be likely to enhance market power. *See Saint Alphonsus*, 778 F.3d at 786. However, Plaintiffs' motion does not include or cite any market share analysis whatsoever, *see* Mot. at 14, and Plaintiffs' complaint alleges only that the merger will increase the HHI to 1,747.46 in the credit card issuance market. *See* Compl. ¶ 37. *Cf. Bradt v. T-Mobile US, Inc.*, No. 19-CV-07752-BLF, 2020 WL 1809716, at *2 (N.D. Cal. Feb. 28, 2020) (finding that plaintiffs had satisfied their Section 7 prima facie burden by citing to FCC report finding that current concentration measure was 2,899 HHI and proposed merger would raise HII by 433 points).[7]

      As to the merger's likely anticompetitive effects in the credit card payment processing market, the complaint makes similarly vague and conclusory allegations insufficient to establish that Plaintiffs are entitled to preliminary relief. Plaintiffs allege that Capital One's potential position in the market as a competitor to Visa and Mastercard "creates a dangerous incentive for the companies to collude on interchange fees" because "Visa and Mastercard may provide Capital One with a larger share of the interchange fees in exchange for refraining from expanding the

---

[7] On reply, Plaintiffs attached a chart prepared by a third party purporting to show that the "percentage of the market is even greater than what plaintiffs stated for HHI." Reply at 13. But the cited exhibit does not include any HHI calculations. *See* Dkt. No. 30.

Discover credit card payment processing network." Compl. ¶ 101. Plaintiffs do not even attempt to support this claim with a specific factual allegation asserting a likely HHI increase in the credit card payment processing market. *See id.* ¶¶ 41–42 (stating a current HHI score, then asserting that the market "will only increase in concentration" after the merger). Similarly, Plaintiffs provide no factual support for their conclusion that competition will be harmed if Defendant does not shift "all of its credit cards to Discover," but instead continues to issue some cards using the Visa and Mastercard payment networks. *See id.* ¶ 101. This pure speculation cannot sustain a finding that substantially anticompetitive effects are likely. Finally, Plaintiffs' motion argues that Defendant's acquisition of the Discover payment network is "per se" illegal because it will cause Capital One to become both a partner and competitor of Visa and Mastercard. Mot. at 8. Yet Plaintiffs provide no factual or legal support for this argument.

The Court thus concludes that Plaintiffs have failed to show that they are likely to meet their prima facie burden to prove Section 7 violations in either relevant market. *See United States v. AT & T Inc.*, 310 F. Supp. 3d 161, 190 (D.D.C. 2018), *aff'd sub nom. United States v. AT&T, Inc.*, 916 F.3d 1029 (holding that in evaluating an attempt to block a merger under Section 7, "antitrust theory and speculation cannot trump facts; [the plaintiff] must make its case on the basis of the record evidence relating to the market and its probable future") (internal citation and quotation omitted).

The insufficiency of Plaintiffs' unsupported, conclusory theories is further underscored by the persuasive evidence in the record indicating that the merger is not likely to substantially decrease competition in the relevant markets. *See* Opp. at 23. After investigating the proposed merger for over a year, the Federal Reserve (or "the Board") found that the credit card issuance market is only moderately concentrated and "would remain so" after the merger, since "thousands of competitors" will remain in the market. *See* Fed. Report at 13.[8] The Board also investigated

---

[8] The Court notes that the Federal Reserve found the appropriate product market for analyzing the competitive effects of the merger to be the market for banking products and services. *See* Fed. Order at 8–9. Accordingly, the Board primarily investigated potential competitive effects in that market. *See id.* at 9–12. However, the Board also investigated the potential competitive effects in the relevant markets as defined by Plaintiffs in order to respond to public comments about the effects of the merger in those markets. *See id.* at 13. Defendant argues that the relevant markets

9

the merger's potential impact on two specific customer segments of the market and found that the resulting HHI increase in those segments also would be moderate. *See id.* at 14. Similarly, the Board found that the merger "would not have a significant negative impact on competition for credit-card payment network services, given the significant, larger competitors that would remain," as Discover currently only accounts for 6.4 percent of all credit card payments. *See id.* at 17. In fact, the Board found that Defendant's migration of credit card customers to the Discover payment system would lower the HHI score for credit card payment network services. *See id.* And Defendant confirmed that after the merger it would be moving a "significant portion of its credit-card volume to Discover's payment networks." *See* Townsend Decl. ¶¶ 22–24.

These facts and findings directly contradict Plaintiffs' conclusory predictions that the merger will negatively impact competition in the relevant markets. But on reply, Plaintiffs do not attempt to rebut them with any analysis or evidence of their own. Instead, they repeat conclusions (not facts) and deficient legal arguments from their opening brief, and maintain that Defendant "seeks to rely" on the merger guidelines that the Federal Reserve follows to "avoid the law." Reply at 29. But it is Plaintiffs who simply fail to meet their prima facie burden under controlling law.

Plaintiffs' only other response to Defendant's rebuttal evidence is their contention that Defendant "may not defeat a showing that the proposed acquisition may substantially lessen competition in one market by showing a potential increase in competition in another market." *See* Mot. at 18–19 (citing *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 370 (1963)); Reply at 12 (same). While that may be true, the Court does not understand Defendant to be making such an argument. Defendant identified the Federal Reserve's findings regarding the procompetitive benefits of the merger in the credit card processing market to rebut Plaintiffs' Section 7 claim as to that market, not their claim as to the credit card issuance market. *See* Opp. at 15–17. Defendant also discussed the Federal Reserve's findings regarding the merger's benefits to the public to argue that an injunction does not favor the public interest. *See id.* at 32–33. The Court's

---

defined by Plaintiffs are not valid, *see* Opp. at 20, but the Court declines to address that question given the other deficiencies in Plaintiffs' request for preliminary injunction.

10

consideration of procompetitive evidence would be proper in both contexts. First, as the Ninth Circuit has recognized, "a defendant can rebut a prima facie case with evidence that the proposed merger will create a more efficient combined entity and thus increase competition," as long as the claimed efficiencies are "verifiable, not merely speculative" and "merger-specific." *See Saint Alphonsus*, 778 F.3d at 790. Second, this case is also governed by the Bank Merger Act. Under the Act, if a court determines that a proposed merger would violate Section 7, the court must then consider whether its procompetitive effects and public interest benefits outweigh its anticompetitive disadvantages such that the merger is permissible. *See United States v. Third Nat. Bank in Nashville*, 390 U.S. 171, 178 (1968); *see also United States v. Phillipsburg Nat. Bank & Tr. Co.*, 399 U.S. 350, 367 (1970) (holding that procompetitive benefits are "certainly relevant in determining the 'convenience and needs of the community' under the Bank Merger Act").

Here, because the Court has determined that Plaintiffs fail to show that they are likely to meet their prima facie burden under Section 7, the Court need not consider the merits of Defendant's rebuttal evidence of procompetitive benefits. *See* Opp. at 23–24. But Plaintiffs' implication that the Court is precluded from considering that evidence in evaluating Plaintiffs' Section 7 claim is incorrect. If Plaintiffs had sufficiently shown that they were likely to make a prima facie case or meet their ultimate burden under Section 7, the Court could in fact consider the evidence of procompetitive benefits. Yet Plaintiffs barely acknowledge that evidence, and do not attempt to meaningfully rebut it.

* * *

Plaintiffs offer only conclusory allegations, attorney argument, and incorrect legal theories to support their prima facie showing. As such, there is no plausible basis from which the Court could find at this stage that the merger is likely to substantially lessen competition, and Plaintiffs have not shown an entitlement to the extraordinary remedy of preliminary injunctive relief.

### B.     Irreparable Harm

Similarly, Plaintiffs' showing of irreparable harm is too vague and conclusory to warrant preliminary injunctive relief. A private plaintiff must "prove threatened loss or damage to his own interests in order to obtain relief" under the Clayton Act. *California v. Am. Stores Co.*, 495 U.S.

271, 296 (1990) (internal quotation and citation omitted). And to obtain a preliminary injunction, "'a plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Boardman*, 822 F.3d at 1022 (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)) (emphasis in original). *See also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm.").

Plaintiffs argue that they will be irreparably harmed by the merger because they "are debit and credit card holders and are threatened and fear future injury and damage in that their consumer choice will be eliminated, prices and rates may be increased, rewards may be lowered or eliminated, and the quality of the services may be decreased, and the benefits of competition will be substantially and adversely impacted if not completely eliminated." Mot. at 19; Reply at 6. They fail to cite any declaration or other evidence in the record to support this claim, and they make no specific allegations and proffer no evidence of imminent harm with respect to any individual Plaintiff. *See* Mot. at 19; Reply at 16. This failure to demonstrate that the proposed merger threatens any individualized harm is fatal as a matter of law. *See Malaney*, 2010 WL 3790296, at *13 (observing that the court "must only consider those injuries plaintiffs advance that are personal to them were defendants to merge, and cannot consider any injuries that plaintiffs allege would be suffered by the general . . . public as a whole"). Likewise, such general allegations cannot establish that the threat of these harms is so immediate as to warrant the drastic remedy of preliminary injunctive relief. Plaintiffs may still pursue the merits of their Section 7 challenge after the merger is complete. *See, e.g.*, *DeHoog*, 899 F.3d 758 (private suit that continued after merger closed); *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118 (N.D. Cal. 2011) (post-merger suit).

### C. Balance of the Equities and Public Interest

Because Plaintiffs have failed to show that the proposed merger is likely to harm to competition or cause them irreparable harm, the balance of the equities simply cannot favor them. As such, the Court need not address whether delaying the merger will injure Defendant, Discover,

12

1  their employees, or the public, as Defendant argues (and supports with evidence).  *See* Opp. at 28–
2  30.  That said, echoing Chief Judge Seeborg's observation in another merger case brought by
3  Plaintiffs' counsel, the Court notes that the claim that delaying this multi-billion-dollar merger, *see*
4  Compl. ¶ 3, one week before its consummation would simply "maintain the status quo," *see* Mot.
5  at 21, "'blink[s] at reality.'"  *See Malaney*, 2010 WL 3790296, at *14 (quoting *Western Airlines,*
6  *Inc. v. Int'l Bhd. of Teamsters*, 480 U.S. 1301, 1309 (1987)).[9]

7   Finally, given Plaintiffs' insufficient showing on the other factors, there is no need for the
8  Court to reach the public interest analysis.  And in any event, Plaintiffs offer no evidence to meet
9  their burden of showing that the public interest disfavors the proposed merger, and they do not
10  even attempt to assert allegations specific to this case.  Instead, they recite generic antitrust
11  principles "enunciated and dating from Adam Smith to Justice Marshall."  Mot. at 21–22; Reply at
12  14.  They also entirely ignore Defendant's evidence that the Federal Reserve found that the merger
13  would offer numerous benefits to the public that are consistent with its approval.  *See* Fed. Order
14  at 64.  The Court need not and does not adopt the substance of these arguments at this point, but
15  notes that Plaintiffs again did not meet their affirmative evidentiary burden or address the
16  extensive underlying record at all in their cursory showing on the public interest factor.

### IV. CONCLUSION

In sum, Plaintiffs have not come close to showing that they are entitled to the extraordinary relief they seek.  They have failed to make even a threshold showing on any of the four preliminary injunction factors.  As such, they cannot meet the *Winter* standard for injunctive relief, and fare no better under the Ninth Circuit's sliding scale approach.  *See Leiva-Perez*, 640 F.3d at 966; *All. for the Wild Rockies*, 632 F.3d at 1135.  The Court therefore **DENIES** the motion for preliminary injunction, Dkt. No. 5.

The Court further **SETS** a case management conference on May 27, 2025, at 2:00 p.m. to

---

[9] Despite the fact that Plaintiffs' motion seeks a trial on the merits in "early 2026," *see* Mot. at 21, and Plaintiffs' reply similarly requests trial in "late 2025," *see* Reply at 14, at the hearing Plaintiffs' counsel maintained that Plaintiffs are asking to delay the merger only by three weeks to complete limited discovery.  Whichever of these representations the Court credits, Plaintiffs have failed to make the showing required to obtain a preliminary injunction of any duration.

1  discuss a schedule and plan to move this case forward expeditiously. The hearing will be held by
2  Public Zoom Webinar. All counsel, members of the public, and media may access the webinar
3  information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for
4  the case management conference are required to join at least 15 minutes before the hearing to
5  check in with the courtroom deputy and test internet, video, and audio capabilities. The Court
6  further **DIRECTS** the parties to submit a joint case management statement by May 20, 2025.

**IT IS SO ORDERED.**

Dated: May 14, 2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge