UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD FRY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL ONE FINANCIAL CORP., et al., <br><br> Defendants. | Case No.  25-cv-03769-HSG <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 61 |

Pending before the Court is Defendant Capital One's motion to dismiss the first amended complaint.  Dkt. No. 61.  The Court finds the matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  The Court **GRANTS** the motion.

## I.    BACKGROUND

Plaintiffs initially filed this lawsuit on April 30, 2025, seeking to block the merger of Defendant Capital One Financial Corporation ("Capital One") and Discover Financial Services ("Discover"), based on alleged violations of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.  Dkt. No. 1.  The merger closed on May 18, 2025 following approval by the Federal Reserve and the Comptroller of the Currency, as well as a review by the Department of Justice for potential competitive effects.[1]  Shortly after filing their complaint but before the merger closed, Plaintiffs filed a motion for preliminary injunction to block the merger.  Dkt. No. 5.  The Court denied the motion for a preliminary injunction, Dkt. No. 41, and Plaintiffs filed an amended complaint on June 6, 2025.  Dkt. No. 53 ("FAC").

---

[1] The DOJ found that the proposed merger did not warrant an "adverse comment" under 12 C.F.R. § 250.182(c). *See* Fed. Order at 17.

The parties are familiar with the allegations underlying this lawsuit. Relevant here, Visa and Mastercard are two credit card processors who authorize banks like Capital One to issue their branded credit cards. *Id.* ¶ 2. By contrast, Discover issues credit cards directly to consumers and operates its own payment processing network. *Id.* ¶ 3. Plaintiffs allege that, because of the merger, "Discover has been eliminated." *Id.* ¶ 4. They contend that the merger has decreased competition in two markets within the United States: the credit card issuance market and the credit card payment processing network market. *Id.* ¶ 47.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet his burden of establishing standing, a plaintiff must show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And where a plaintiff seeks injunctive relief, he must also demonstrate a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation and quotations omitted). If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citation and quotations omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is

United States District Court
Northern District of California

2

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. DISCUSSION

### A. Article III Standing

Capital One argues as a threshold matter that Plaintiffs lack standing. As the parties invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). A plaintiff has Article III standing when: (1) he or she suffers a "concrete and particularized" injury-in-fact; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Defendant first argues that Plaintiffs lack standing because they engage in impermissible group pleading and do not make individualized allegations as to any Plaintiff. Dkt. No. 61 ("MTD") at 12.[2] The Court agrees. "The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need

---

[2] Unless otherwise noted, all page numbers referenced herein are to the ECF page number at the top of the page.

United States District Court
Northern District of California

United States District Court
Northern District of California

not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) (citing *Carey v. Population Services Int'l,* 431 U.S. 678, 682 (1977)).  Here, however, Plaintiffs' cursory allegations make it impossible for the Court to determine if any one of them has Article III standing to state a claim under Section 7 of the Clayton Act.  Plaintiffs allege that they "have various debit and credit cards including Capital One and Discover," and that they "directly participate in the relevant markets."  FAC ¶ 27.[3]  Plaintiffs also allege that they "reside in and use Capital One issued cards in one or more" of the 12 states where they reside.  *Id.* ¶ 28.  But based on Plaintiffs' allegations, it is unclear what cards they have or how they use them, and no specific alleged facts support the assertion that any one of them "participate[s] in the relevant markets."  As a result, it is also unclear to the Court what if any harm the Plaintiffs face.  *See Whalen v. Albertsons Companies Inc.*, No. 23-CV-00459-VC, 2023 WL 4955141, at *1 (N.D. Cal. Aug. 2, 2023) ("Because they have failed to plausibly allege that they face a substantial risk of harm, the plaintiffs lack Article III standing)[4]; *see also In re Apple iPhone Antitrust Litig.*, No. 11-CV-06714-YGR, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013) ("Plaintiffs do not satisfy Article III standing with collective allegations that they have been deprived of lower cost alternatives, paid higher prices for Apple-approved applications, and/or had their iPhones disabled or destroyed.").

Plaintiffs assert that each of them "maintains an individual claim," and that they "are able to submit at discovery, under seal, their respective bank account information" to show that they participate in the relevant markets.  Opp. at 18; FAC ¶ 27.  The Ninth Circuit has rejected similar arguments "because . . . discovery cannot cure a facially insufficient pleading."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).  As the Supreme Court has found, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded

[3] The Court finds that Plaintiffs' allegations regarding debit cards are irrelevant, because they have alleged that the relevant market concerns credit cards.  FAC ¶ 47.  Defendants note that Plaintiffs' allegations about debit cards appear to be a drafting error, since the as-filed FAC lacks allegations regarding the debit card market that were included in a draft of the FAC shared with Defense counsel.  MTD at 10.

[4] Plaintiffs argue that *Whalen* is inapposite because the merger was dissolved, but the Court finds that this argument does not address whether the plaintiffs in that lawsuit (who are the same plaintiffs here) had Article III standing to sue.

out early in the discovery process through careful case management." *Twombly*, 550 U.S. at 559 (internal quotation and citation omitted). And the Court rejects Plaintiffs' suggestion that pleading basic individualized facts confirming what Capital One or Discover cards they have and how they use them would require them to divulge private bank information or requires discovery.

Capital One next argues that Plaintiffs do not plausibly plead a "substantial risk" that the merger will harm Plaintiffs because their allegations are "based on an attenuated chain" of events. MTD at 14. Again, the Court agrees. Plaintiffs allege that "prices and rates *may* be increased; rewards *may* be lowered or eliminated; the quality of the services *may* be decreased; and the benefits of competition will be substantially and adversely impacted if not completely eliminated." FAC ¶ 27 (emphasis added). The Court finds that this theory of harm is attenuated and conclusory. As Defendants note, it is based on Plaintiffs' assertion that "(1) Capital One 'may' agree to shelve Discover's payment network in exchange for higher interchange fees from Visa and Mastercard, (2) in response to higher interchange fees, some set of unidentified merchants will increase prices on some set of unidentified consumer goods, and (3) these [] Plaintiffs . . . will then buy those goods, thus paying more." MTD at 14. Plaintiffs all but confirm the conclusory nature of their pleadings in their opposition. *See* Opp. at 20 (asserting that the "presumptive lessening of actual and potential competition" is "sure to result," because the merger "eliminates" Discover as an "independent actor[]"). The Court finds that Plaintiffs fail to plead any specific factual support for these assertions.

Plaintiffs allege they have statutory right to bring a claim, and they argue that "the law favors" them, citing *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013), for the proposition that the Supreme Court "do[es] not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about." Opp. at 19. But the Court finds that here, as in *Clapper*, Plaintiffs fall short of alleging they have Article III standing "in light of the attenuated chain of inferences necessary to find harm." *Clapper*, 568 U.S. at 414 n.5.[5] As the

---

[5] The Court also rejects Plaintiffs' unserious suggestion that any case discussing Article III standing arguments is inapposite unless it concerns antitrust claims or arose on a motion to dismiss. *See* Opp. at 16–17. As a jurisdictional rule, Article III standing may be raised at any time, and applies across the myriad areas of law that arise in federal courts. *Iten v. Los Angeles*,

Supreme Court has held, "injury in the law is not an injury in fact." *TransUnion*, 594 U.S. at 427. The Court therefore **GRANTS** Defendant's motion to dismiss for lack of standing.

### B.    Rule 12(b)(6) Motion

Defendants further argue that even if Plaintiffs could show standing, they fail to state a viable antitrust claim because they do not allege facts supporting the proposed relevant markets, or showing that the Transaction is likely to substantially lessen competition. *See generally* MTD. The Court agrees on both counts.

#### i.    The Relevant Market

In any antitrust case, a plaintiff must "meet the threshold step of defining a relevant market." *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023); *see also Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("A threshold step in any antitrust case is to accurately define the relevant market."). "[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018). Market definition is essential to any antitrust case because "'[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition.'" *Coronavirus Rep.*, 85 F.4th at 955 (quoting *Am. Express*, 585 U.S. at 543). "A relevant market contains both a geographic component and a product or service component." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 975 (9th Cir. 2023). "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). "Courts also consider the practical indicia of a market, including industrial or public recognition of a market as a separate entity or sensitivity to price changes. *Coronavirus Rep.*, 85 F.4th at 955 (quotation omitted).

The Court finds that the FAC does not contain any "allegations going to the relevant tests for market definition in an antitrust case," MTD at 17, and that this is fatal to their antitrust claim, *see MLW Media LLC v. World Wrestling Ent., Inc.*, 655 F. Supp. 3d 946, 950–51 (N.D. Cal.

81 F.4th 979, 985 (9th Cir. 2023).

United States District Court
Northern District of California

2023).  Plaintiffs allege that the geographic market is the United States, and that there are two relevant product markets: the general-purpose credit card issuance market and the credit card payment processing networks market.  FAC ¶ 47.  In their opposition, Plaintiffs contend that they have sufficiently alleged "the nature and extent of the credit card markets in issue."  Opp. at 25 (citing FAC ¶¶ 24–31).  The Court finds, however, that none of those allegations "attempt to demonstrate [] cross-elasticity . . . as [Plaintiffs] must."  *Coronovirus Rep.*, 85 F.4th at 956.  Plaintiffs also assert, without citing any specific portion of their complaint, that "the parameters and working of the credit card market(s) are alleged throughout" the FAC.  Opp. at 25.  But the Court is not obligated "to scour the record" for allegations sufficient to meet the pleading requirements, *Keenan v. Allen,* 91 F.3d 1275, 1279 (9th Cir.1996), and even on a review of the FAC, the Court finds that Plaintiffs have "failed to draw the market's boundaries to encompass the product at issue as well as economic substitutes for the product."  *Coronovirus Rep.*, 85 F.4th at 956.  Finally, Plaintiffs contend that because credit cards are "well known and understood," they have no obligation to adequately plead the relevant markets in their complaint.  Opp. at 25.  They are mistaken: binding Ninth Circuit precedent plainly requires them to do so.  *See Coronovirus Rep.*, 85 F.4th at 956.

Capital One also argues that Plaintiffs' alleged markets contravene "decades of Supreme Court precedent and regulatory practice," because in a bank merger, the relevant product market is "the entire cluster of services that constitute commercial banking."  MTD at 18.  Plaintiffs do not respond to these arguments, but insist that their allegations concerning the relevant market are sufficient because they are borrowed directly from the Supreme Court's market definition in *Ohio v. American Express.*  Opp. at 26.  But *Ohio v. American Express* was not a merger case, and Defendants are correct that the Supreme Court and other courts have defined the relevant market as they note in such cases.  *See United States v. Marine Bancorporation, Inc.*, 418 U.S. 618, 618–19, n.16 (1974) (collecting cases); *United States v. First Nat'l Bancorporation, Inc.*, 329 F. Supp. 1003, 1011–12 (D. Colo. 1971), *aff'd,* 410 U.S. 577 (1973) ("Since *Philadelphia National Bank* the Supreme Court has . . . stated in no uncertain terms that commercial banking is the relevant line of commerce.").  Ultimately, because of the significant other pleading deficiencies that remain

in Plaintiffs' complaint, the Court does not reach this sub-issue, and reiterates that it is Plaintiffs' burden to adequately define and plead a plausible relevant market in any amended complaint.

### ii. Prima Facie Claim

Capital One also argues that Plaintiffs fail to state a prima facie claim under Section 7 of the Clayton Act for either the horizontal (credit cards) or vertical (payment networks) aspect of the Transaction. MTD at 18. Section 7 prohibits mergers where "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. A plaintiff must show a "'reasonable probability that the merger will substantially lessen competition' in any relevant market to prevail on the merits of an underlying § 7 claim." *Fed. Trade Comm'n v. Microsoft Corp.*, 136 F.4th 954, 964 (9th Cir. 2025) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). Courts apply a burden-shifting framework to Section 7 claims, under which the plaintiff must first establish a prima facie case that a merger is anticompetitive. *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015). "[A] prima facie case is established if the plaintiff proves that the merger will probably lead to anticompetitive effects in [the relevant] market." *Id.* at 785. The burden then shifts to the defendant to rebut the prima facie case. *Id.* at 783. If the defendant successfully rebuts the prima facie case, the burden of production shifts back to the plaintiff. *Id.*

The Court finds that Plaintiffs do not meaningfully engage in this burden shifting analysis, for either the vertical or horizontal aspect of their claim. Plaintiffs contend that they "have alleged probable anticompetitive effects in both markets," Opp. at 26, but they do not tether this statement to specific factual allegations, and even if they had, the Court finds that these allegations are conclusory and do not plausibly state a claim. Plaintiffs again proffer two theories to argue that the proposed merger will "substantially lessen competition" in the relevant markets. FAC ¶ 105. First, they allege that the merger will "eliminate" Discover, and as a result, American Express will be the only vertically integrated independent credit card issuer in the general credit card issuance market, which "will lessen (likely eliminate entirely) downward price pressure." *See id.* ¶¶ 95–97. Second, Plaintiffs allege that the merger will turn Capital One into a competitor of Visa and Mastercard in the credit card payment processing market, which will enable Defendant to

"collude" with Visa and Mastercard to set higher prices on interchange fees, which will then be passed on to cardholders. *See id.* ¶¶ 98–101.

The Court finds that Plaintiffs do not, as they must, plead facts "specifically show[ing] that the proposed merger has a reasonable probability of anticompetitive effects in [either] relevant market." Dkt. No. 41 at 7. As to their theory of anticompetitive effects in the credit card issuance market, *i.e.*, the horizontal aspect of the merger, the Court again finds that Plaintiffs "simply assert that the elimination of Discover as one of two vertically integrated credit card issuers in the market Capital One will apply [a] higher fee margin to its bottom line, and the result will be to lessen competition in the market." Dkt. No. 41 at 7; FAC ¶¶ 95–96. Plaintiffs seek to support their claim with statistical charts that purport to show the relative market shares and rankings of Capital One and other entities in the relevant markets, appending over two dozen "slides" to their amended complaint. *See* FAC ¶¶ 11, 13–15, 17–18, 20, FAC "Slides" 1–26. But contrary to their assertions otherwise, "market share statistics alone are 'not conclusive indicators of anticompetitive effects.'" Dkt. No. 41 at 8 (citing *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974)).[6]

Plaintiffs have removed allegations concerning an increase in HHI, leaving only their reliance on *United States v. Philadelphia National Bank*, 374 U.S. 321 (1963), and generalized allegations regarding concentration in the commercial banking market to support their challenge to the horizontal aspect of the merger.[7] As Defendants note, some courts hold that a plaintiff can satisfy their prima facie burden by showing that the merger will yield a combined market share of over 30%. *See, e.g.*, *FTC v. IQVIA Holdings, Inc.*, 710 F. Supp. 3d 329, 378–79 (S.D.N.Y. 2024). But Plaintiffs fall short of this standard as a matter of law, Defendant argues, because they allege that the combined market share of Capital One and Discover post-merger will amount to only

---

[6] Intentionally or not, Plaintiffs misquote *General Dynamics* in their opposition to argue that such statistics *are* "conclusive indicators of anticompetitive effects," when the cited language says the exact opposite. Opp. at 21; *Gen. Dynamics Corp.*, 415 U.S. at 498. Any future misstatements of case holdings will be a basis for sanctions.

[7] As the Court previously found, Plaintiffs' allegations concerning HHI fell short of the standard for a *prima facie* claim under binding Ninth Circuit precedent. *See* Dkt. No. 41 at 8 (citing *Saint Alphonsus*, 778 F.3d at 786).

16.2%.  *See* MTD at 19; FAC Slides 20, 22, 23.  Defendant also argues that Plaintiffs' assertion of a 16.2% market share is "overstated," because it is "based only on the top 10 credit-card issuers," who only account for 82.5% of the market's volume.   Plaintiffs do not respond to either of these arguments, *see* Opp. at 20–21, and the Court agrees with Defendant.  An allegation of a 16.2% market share is insufficient following *Philadelphia National Bank*, and in any event, Plaintiffs do not plausibly allege why it is appropriate to gerrymander the market share by limiting their analysis to the top 10 credit card issuers.  Accordingly, the Court finds that Plaintiffs' claim fails as to the horizontal aspect of the merger.  *See Demartini v. Microsoft Corp.*, No. 22-CV-08991-JSC, 2023 WL 4239653, at *4 (N.D. Cal. June 27, 2023) (dismissing plaintiffs' horizontal merger claim where they narrowed the field of competitors included in their market share analysis without explanation).

The Court also finds that Plaintiffs' allegations are again insufficient to state a claim with respect to the vertical aspect of the merger, in the credit card payment processing market.  Very few courts have addressed whether the burden shifting framework for horizontal mergers applies to vertical ones, likely because until 2018, the government had "not tried a vertical merger case to decision in four decades."  *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 194 (D.D.C. 2018) (emphasis removed).  But those courts that have considered vertical mergers have found that a plaintiff "must make a fact-specific showing that the proposed merger is likely to be anticompetitive."  *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1084 (N.D. Cal. 2023) (quoting *United States v. AT&T, Inc.*,  916 F.3d 1029, 1032 (D.C. Cir. 2019)).  The Court adopts this standard, and finds that Plaintiffs fail to meet it.

Plaintiffs' allegations concerning the merger's anticompetitive effects in the credit card payment processing market are again "vague and conclusory."  Dkt. No. 41 at 8.  Plaintiffs assert that Visa and Mastercard may "collude" with Capital One to disincentivize it from moving its cardholder base to Discover, by providing it with increased interchange fees.  FAC ¶ 100.  They also allege that "Capital One will no longer face competition from the vertically integrated Discover" and will therefore have a "lesser incentive to remit a larger portion of the interchange fees to its customers as rewards."  *Id.*  And Plaintiffs conclude, again without alleging any factual

support, that competition will be harmed if Defendant does not shift "all of its credit cards to Discover," FAC ¶ 100, but instead "continues to issue some cards using the Visa and Mastercard payment networks," Dkt. No. 41 at 9. This "pure speculation cannot support a finding that substantially anticompetitive effects are likely." *Id.* Plaintiffs do not allege any specific factual support for these conclusions, or advance any legal argument explaining why the Court should accept them now. Accordingly, the Court **GRANTS** the motion to dismiss for failure to state a claim.

### C.   Available Remedies

Finally, the Court finds that binding Ninth Circuit precedent bars Plaintiffs' request for disgorgement as a remedy. "Disgorgement is a form of retrospective equitable relief." *Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (citing *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352 (1998)). The Ninth Circuit has held that private plaintiffs may not seek "recovery for past losses" via a Section 16 claim. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976). To the extent that Plaintiffs actually seek damages, *see* Opp. at 22, they must do so in their prayer for relief, and not through argument in their opposition brief. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (internal quotation and citation omitted).

## IV.   CONCLUSION

At present, it is not clear to the Court that Plaintiffs could not allege any set of facts supporting Article III standing. Therefore, the Court finds that leave to amend is appropriate to the extent Plaintiffs can allege additional facts to satisfy this requirement. However, the Court also cautions Plaintiffs that any amended allegations concerning injury-in-fact must adequately lay out the factual basis for the claim, as required by *Twombly*. If Plaintiffs choose to amend their complaint, the Court has also given significant guidance on how their complaint falls short of stating a prima facie claim under the Clayton Act. Accordingly, the Court **GRANTS** Defendant's

United States District Court
Northern District of California

11

motion to dismiss for lack of standing **WITH LEAVE TO AMEND**.[8]  Dkt. No. 61.

To the extent Plaintiffs can state a claim that comports with these requirements, they may file an amended complaint within 21 days of the date of this order, but they may not add any new claims or defendants.  The Court is strongly of the view that serial pleading litigation is an inefficient and time-consuming use of Court and party resources, and Plaintiffs need to plead their very best case, with adequate supporting factual allegations. The Court is very unlikely to allow further leave to amend as to any claim not adequately pled in the next amended complaint, given that Plaintiffs will have had multiple opportunities to state a claim by that point.

**IT IS SO ORDERED.**

Dated:   3/17/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

---

[8] To the extent that Plaintiffs choose to amend their complaint, the Court **DIRECTS** them to file a red-lined version reflecting any changes that have been made.

12